# Syllabus

Chief Justice:
Robert P. Young, Jr.

Justices:
Michael F. Cavanagh
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Corbin R. Davis

GRANGE INSURANCE COMPANY OF MICHIGAN v LAWRENCE
AUTOMOBILE CLUB INSURANCE ASSOCIATION v STATE FARM MUTUAL
AUTOMOBILE INSURANCE COMPANY

Docket Nos. 145206, 143808. Argued April 11, 2013 (Calendar No. 1). Decided July 29, 2013.

Grange Insurance Company of Michigan brought an action in the Muskegon Circuit Court, seeking a declaratory judgment regarding its responsibility under a no-fault insurance policy issued to Edward Lawrence to reimburse Farm Bureau General Insurance Company of Michigan for personal protection insurance (PIP) benefits it had paid following the death of Josalyn Lawrence, a minor, as the result of an automobile accident. The accident occurred while Josalyn's mother, Laura Rosinski, was driving a vehicle insured by Farm Bureau. Josalyn's father, Edward Lawrence, and Rosinski were divorced at the time of the accident and shared joint legal custody of the child, although Rosinski had primary physical custody. Edward Lawrence was the named insured on an automobile insurance policy issued by Grange. Farm Bureau sought partial reimbursement of the PIP benefits paid, arguing that Grange was in the same order of priority under MCL 500.3115(2), because Josalyn was domiciled in both parents' homes under MCL 500.3114(1). Farm Bureau filed a counterclaim and both insurers filed motions for summary disposition. The circuit court, Timothy G. Hicks, J., granted Farm Bureau summary disposition, finding that Josalyn had two domiciles at the time of her death. Grange appealed. The Court of Appeals, BECKERING, P.J., and OWENS, and RONAYNE KRAUSE, JJ., affirmed the circuit court's order, concluding that Josalyn resided and was domiciled with both parents. The Court of Appeals also held that Grange's policy was invalid because it required a court adjudication of custody to be conclusive for determining a child's "principal residence," which would improperly limit Grange's obligation where the no-fault act does not. 296 Mich App 319 (2012). The Supreme Court granted Grange's application for leave to appeal in Docket No. 145206 to determine whether the minor child of divorced parents can have two domiciles for the purpose of determining coverage under MCL 500.3114(1) of Michigan's no-fault act, whether a custody order affects the determination of domicile and whether an insurance policy provision giving preclusive effect to a court-ordered custody arrangement is enforceable. 493 Mich 851 (2012).

Automobile Club Insurance Association (ACIA) brought an action in the Ingham Circuit Court, seeking a determination regarding its duty under a no-fault insurance policy for PIP benefits paid by State Farm Mutual Automobile Insurance Company following the death of Sarah Campanelli, a minor, as the result of an automobile accident. At the time of the accident, Sarah's parents, Francis Campanelli and Tina Taylor, were divorced and shared joint legal

custody of Sarah, but Campanelli had physical custody, with Taylor allowed reasonable visitation. Soon after the divorce, the family court modified the original judgment of divorce, permitting Campanelli to move and to change Sarah's domicile to Tennessee. When the accident occurred eleven years later, Sarah was staying in Michigan to attend school after a summer visit with her mother. Sarah was fatally injured while a passenger in a car driven by a friend that was insured by State Farm. ACIA, as the insurer of Terry Gravelle, Sarah's uncle and in whose household she resided while in Michigan, paid Sarah's medical bills during the period before her death. ACIA claimed that State Farm was the responsible insurer pursuant to MCL 500.3114(4), arguing that Sarah was not domiciled in Michigan and that ACIA was therefore not responsible for Sarah's PIP benefits under MCL 500.3114(1). State Farm denied liability and both parties filed cross-motions for summary disposition. The circuit court, Joyce Draganchuk, J., granted State Farm summary disposition and ruled that ACIA was responsible for Sarah's PIP benefits, finding that the facts demonstrated that Sarah resided and was domiciled in Michigan in part because there was a lack of evidence of a clear intent to return to Tennessee. ACIA appealed. The Court of Appeals, MARKEY, P.J., and WILDER, and STEPHENS, JJ., reversed, concluding that there was a question of fact as to Sarah's domicile. The Court of Appeals also rejected ACIA's argument that the judgment of divorce and subsequent modification conclusively established Sarah's domicile for purposes of insurance coverage. Unpublished opinion per curiam of the Court of Appeals, issued June 21, 2011 (Docket No. 294324). The Supreme Court heard oral argument on ACIA's application for leave to appeal in Docket No. 143808 to determine whether the judgment of divorce, as amended, conclusively established Sarah's legal residence and domicile in Tennessee or whether she had the capacity to acquire a different legal residence or domicile of choice. 491 Mich 875 (2012).

In an opinion by Justice KELLY, joined by Chief Justice YOUNG, and Justices CAVANAGH and VIVIANO, the Supreme Court *held*:

Consistent with the common law, a child of divorced parents has only one domicile at any given point in time. A family court custody order establishes a child's domicile by operation of law and determines the child's domicile for all purposes, including the no-fault act.

1. Under MCL 500.3114(4)(1), PIP benefits are paid for accidental bodily injury arising out of a motor vehicle accident to the person named in the policy, the person's spouse, and a relative of either domiciled in the same household. As used in the no-fault act, the term "domiciled" is a technical word that is construed according to its peculiar and appropriate meaning. MCL 500.3114(1) incorporates the common-law definition of domicile, which means that place where a person has his fixed, permanent home, and principal establishment, and to which, whenever he is absent, he has the intention of returning. While a person may have more than one residence, he may have only one domicile at any point during his or her life. Generally, a domicile is determined by reviewing the person's intent as related to the residence, as well as considering all the facts and circumstances taken together. When deciding to whom insurers would be liable for the payment of PIP benefits, MCL 500.3114(1), there is no evidence that the Legislature intended to deviate from the common-law definition of "domicile" and use of the word evinces an intent to incorporate all common-law legal concepts related to the term. Accordingly, a child, whose parents are divorced and who has more than one legal residence, may have only a single domicile at any one point in time that continues until the child acquires a

different one.  The holding is consistent with *Workman v Detroit Auto Inter-Ins Exch*, 404 Mich 477; 274 NW2d 373 (1979), which recognized that the Legislature has sometimes given the term "residence" the equivalent meaning of "domicile"; however, for purposes of the no-fault act, the term "domicile" is not the equivalent of "residence."  In *Grange* the Court of Appeals erred by interpreting *Workman* to mean that domicile is the equivalent of residence and that a minor child can be "domiciled" for purposes of MCL 500.3114(1) in multiple residences.

2.  The common law recognizes three means of acquiring a domicile: (1) domicile of origin or of nativity, which is established when a person is born; (2) domicile of choice, which occurs when a person replaces his current domicile by choosing another; and (3) domicile by operation of law, which occurs when a person with a legal disability lacks the capacity to acquire a domicile of choice and one is established by operation of law.  An unemancipated child, unlike a competent adult, lacks the legal capacity to acquire a domicile of choice and, therefore, a child's domicile is determined by reference to the domicile of his or her parents.  While intent is critical for determining the domicile of an adult, a child's intent is irrelevant and the *Workman* factors that are considered to inform an adult's intent to change his domicile are not applicable when determining a child's domicile.  Rather, when a child is born, the child's domicile of origin is that of his or her father and remains the same until a new domicile is acquired through the actions of the child's parents or until that point in time when the minor can acquire a domicile of choice through emancipation or by reaching the age of majority.

3.  The common law recognizes that following the divorce of a child's parents and entry of a custody order, the child's domicile is established by operation of law consistent with the terms of the custody order and is determinative of the child's domicile for all purposes, including the no-fault act.  This holding is also consistent with the Child Custody Act, MCL 722.21 *et seq*., itself, which entrusts courts with making custody determinations in a child's best interests.  In these situations, the terms of the custody order are therefore determinative of a minor child's domicile.  In accordance with the common law, which focuses primarily on location in a determination of domicile, the relevant consideration is which parent has physical custody under the terms of the order.  For example, a child's domicile is with the parent who is granted primary or sole physical custody under the terms of the custody order, regardless of whether the parents share joint legal custody.

4.  The Child Custody Act is consistent with the common-law rule that a person may have only one domicile at any given point in time and there is no express indication that the Legislature intended a different result.  That parents are legally bound by the terms of a custody order and, therefore, lack the legal capacity to independently change the child's domicile mandates the conclusion that a child's domicile is established by the court as a matter of law.

5.  In *Grange*, the lower courts erred by denying Grange summary disposition.  Josalyn was domiciled with Rosinski at the time of her accident because the 2005 judgment of divorce granted Rosinski primary physical custody and the order had never been modified pursuant to the provisions of the Child Custody Act; in addition, Josalyn had not reached the age of majority or become emancipated such that she could acquire a different domicile of her own choosing.  The lower courts erred by concluding that Josalyn was domiciled with both parents, erred by failing to recognize the legal effect of the family court order, and erred by applying the *Workman*

factors that are inapplicable to a minor child whose domicile is set by operation of law. Because Josalyn was not domiciled with Lawrence, his insurer, Grange, was not required to reimburse Farm Bureau under MCL 500.3115(2) for the PIP benefits it paid.

6. In *ACIA*, the lower courts erred by denying ACIA summary disposition. The 1995 judgment of divorce granted Taylor and Campanelli joint legal custody. It granted Campanelli primary physical custody and expressly established Sarah's domicile in Michigan. The judgment was later modified in 1996 by court order changing Sarah's domicile to Tennessee where Campanelli retained primary physical custody. Although Sarah was residing in Michigan with her mother at the time of the accident, her domicile remained in Tennessee as established by the 1996 order. ACIA, the insurer of the Michigan household in which Sarah resided, was not liable for PIP benefits under MCL 500.3114(1).

*Grange* reversed and remanded to the circuit court for entry of summary disposition in favor of Grange.

*ACIA* reversed and remanded to the circuit court for entry of summary disposition in favor of ACIA.

Justice ZAHRA, joined by Justices MARKMAN and McCORMACK, concurred in the result reached by the majority in both *Grange* and *ACIA*. He agreed with the majority that any person, including a minor child, can have only one domicile at any given time and that *Workman* does not stand for the proposition that "domicile" is the equivalent of "residence" for purposes of the no-fault act. He disagreed, however, with the rule the majority adopted for determining the domicile of a child with two legal residences under the Child Custody Act. The majority's holding that the domicile of a child with two legal residences is determined by a family court order establishing physical custody of that child: (1) improperly assumes that a physical custody order is the same as a domicile determination as a matter of law, (2) allows a family court order awarding joint physical custody to establish an alternating domicile system, which is inconsistent with the rule that a person may have only one domicile, and (3) impinges on an insurer's ability to accurately assess its risks when entering into insurance agreements and places an unreasonable burden on insurers to inquire about and interpret family court custody orders. Justice ZAHRA would have held that family court custody orders establish a presumption of domicile that may be rebutted when the child's actual living arrangements are so clearly inconsistent with the family court's custody order that it is reasonable to conclude that the parents have expressly or impliedly reached an agreement regarding the child's domicile. To rebut this presumption, Justice ZAHRA would have required courts to consider the factors traditionally used to assess domicile to determine the domicile of minor children.

©2013 State of Michigan

# Opinion

Chief Justice:          Justices:

Robert P. Young, Jr.   Michael F. Cavanagh
                        Stephen J. Markman
                        Mary Beth Kelly
                        Brian K. Zahra
                        Bridget M. McCormack
                        David F. Viviano

FILED JULY 29, 2013

STATE OF MICHIGAN

SUPREME COURT

GRANGE INSURANCE COMPANY OF
MICHIGAN,

        Plaintiff/Counterdefendant-
        Appellant,

v                                   No. 145206

EDWARD LAWRENCE, Individually and
Joint Personal Representative of the Estate of
Josalyn A. Lawrence, and LAURA
ROSINSKI, Individually and Joint Personal
Representative of the Estate of Josalyn A.
Lawrence,

        Defendants-Appellees,
and

FARM BUREAU GENERAL INSURANCE
COMPANY OF MICHIGAN,
        Defendant/Counterplaintiff-
        Appellee.

_____

AUTOMOBILE CLUB INSURANCE
ASSOCIATION,

        Plaintiff-Appellee/Cross-
        Appellant,

v                                   No. 143808

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

> Defendant-Appellant/Cross-
> Appellee,

and

ALLSTATE INSURANCE COMPANY,

> Defendant.

---

BEFORE THE ENTIRE BENCH

MARY BETH KELLY, J.

These cases present two related issues under Michigan's no-fault act:[1] (1) whether a child of divorced parents who has a legal residence in both parents' homes and who is injured in an automobile accident can be "domiciled" in more than one household within the meaning of MCL 500.3114(1); and (2) whether a family court order establishing the custody of minor children is conclusive evidence of a child's domicile for purposes of determining coverage under MCL 500.3114(1). We hold, consistent with traditional definitions of the term "domicile" under the common law and as that term is used in MCL 500.3114(1), that a child of divorced parents has only one domicile at any given point in time. Further, in the event that the child's parents are divorced and a family court has entered an order relating to custody, we hold, consistent with the common law of domicile as it pertains to minors and the legally binding nature of custody orders, that

---

[1] MCL 500.3101, *et seq.*

2

the child's domicile is established by operation of law and that the custody order is thus determinative of the child's domicile for all purposes, including the no-fault act.

In both *Grange* and *ACIA*, the respective judgment of divorce and custody order conclusively established the minor children's domiciles. Accordingly, we reverse the judgment of the Court of Appeals in *Grange*, which erroneously held that a minor of divorced parents can have two domiciles, and we remand to the circuit court for entry of summary disposition in favor of Grange Insurance Company. In *ACIA*, we reverse the judgment of the Court of Appeals, which erred by concluding that a question of fact existed regarding the child's domicile, and we remand to the circuit court for entry of summary disposition in favor of ACIA.

## I. FACTS AND PROCEDURAL HISTORY

### A. *GRANGE v LAWRENCE*

Edward Lawrence and Laura Rosinski were married in 1997 and had two daughters, Katelyn and Josalyn, the latter of whom is the deceased insured in this case. Lawrence and Rosinski divorced in 2005; Rosinski remained in the marital home and Lawrence moved into his parents' home, both located in Muskegon, Michigan. The judgment of divorce granted Lawrence and Rosinski joint legal custody of Josalyn and Katelyn, but Rosinski was given "primary physical custody" of the girls. The judgment of divorce provided Lawrence with frequent parenting time, including alternating weekends, Wednesday evenings, alternating holidays, liberal phone contact, and liberal parenting time when Rosinski was unavailable. The judgment of divorce further provided:

A parent whose custody or parenting time of a child is governed by this order, shall not change the legal residence of the child except in compliance with [MCL 722.31], which prohibits moving a child out of the State of Michigan or greater than 100 miles from the non-custodial parent without a court order. The party awarded custody must notify the Friend of the Court, in writing, immediately, when the minor child is moved to another address.

On September 24, 2009, eight-year-old Josalyn was a passenger in a car owned and driven by Rosinski when another driver ignored a stop sign and hit Rosinski's vehicle, resulting in fatal injuries to Josalyn. Rosinski and Lawrence were appointed as joint personal representatives of Josalyn's estate.[2]

After the accident, Rosinski and Lawrence submitted claims for personal injury protection (PIP) insurance benefits to their respective insurers. Rosinski was the named insured on an automobile insurance policy provided by Farm Bureau General Insurance Company of Michigan (Farm Bureau); Lawrence was the named insured on an automobile insurance policy provided by Grange Insurance Company (Grange). Farm Bureau insured the car that was involved in the accident and Grange did not insure any vehicle involved in the accident. With regard to Rosinski's claim, Farm Bureau paid more than $30,000 in PIP benefits for Josalyn's injuries and death; Grange denied Lawrence's claim for PIP benefits.

Subsequently, Farm Bureau asserted that Grange was in the same order of priority for the payment of PIP benefits because, in its view, Josalyn was "domiciled" in both parents' homes pursuant to MCL 500.3114(1); Farm Bureau thus sought from Grange

---

[2] At the time of the accident, the 2005 judgment of divorce was still in effect. However, Lawrence had moved into a two-bedroom apartment, while Rosinski continued to reside in the former marital home.

4

partial reimbursement of benefits pursuant to MCL 500.3115(2). Grange denied the claim and filed a complaint for declaratory relief, seeking a declaration that Josalyn was domiciled with Rosinski, not Lawrence, at the time of the accident. Grange asserted that it was not required to reimburse Farm Bureau for any of the PIP benefits that Farm Bureau had paid because Josalyn was not "domiciled" with Lawrence at the time of the accident as required by MCL 500.3114(1), and Michigan law does not recognize dual domiciles. Grange further asserted that it was not obligated to pay PIP benefits for Josalyn's injuries because Josalyn was not a named insured under its policy.[3]

Farm Bureau filed a counterclaim seeking a declaratory judgment that Josalyn was domiciled with each of her parents at the time of the accident and that Farm Bureau was entitled to partial reimbursement of the PIP benefits it had paid. Farm Bureau also argued that the Grange policy conflicted with the no-fault act by excluding Josalyn as an insured through its automatic attribution of domicile to the residence of the custodial parent.

Both insurance companies filed motions for summary disposition pursuant to MCR 2.116(C)(10) and the circuit court granted summary disposition to Farm Bureau.

_____

[3] The pertinent portion of Grange's policy provided PIP "benefits to or for an **insured** who sustains bodily injury . . . caused by an accident." The Grange policy defined "insured" to include "**You** or any **family member** injured in an **auto accident**." The Grange policy further defined "family member" as:

> [A] person related to **you** by blood, marriage or adoption and whose principal residence is at the location shown on the Declarations page. *If a court has adjudicated that one parent is the custodial parent, that adjudication shall be conclusive with respect to the minor child's principal residence.* [Emphasis added.]

5

Applying the factors that are traditionally used to determine domicile under the no-fault act as set forth in *Workman v Detroit Automobile Inter-Insurance Exchange*[4] and *Dairyland Insurance Co v Auto-Owners Insurance Co*,[5] the circuit court concluded that Josalyn had two domiciles at the time of the accident, one with each parent. The circuit court thus ordered Grange to reimburse Farm Bureau for 50 percent of the PIP benefits Farm Bureau had paid and 50 percent of Farm Bureau's processing expenses.

Grange appealed to the Court of Appeals, which affirmed the circuit court's decision.[6] The Court of Appeals rejected Grange's argument that Michigan law does not recognize dual domiciles for a minor child of divorced parents because, according to the panel, "[t]he Michigan Supreme Court has . . . determined . . . for purposes of the no-fault act, [that] the terms 'domicile' and 'residence' are 'legally synonymous'" and "nothing in MCL 500.3114(1) . . . limits a minor child of divorced parents to one domicile or defines domicile as a 'principal residence.'"[7] After applying the domicile factors from *Workman* and *Dairyland*, the Court of Appeals concluded that the undisputed evidence established that Josalyn resided with both parents. Regarding the effect of the judgment of divorce, which established primary physical custody with Rosinski, the Court of Appeals stated, "that order does not change the fact that the evidence showed that Josalyn actually

[4] *Workman v Detroit Auto Inter-Ins Exch*, 404 Mich 477, 496-497; 274 NW2d 373 (1979).

[5] *Dairyland Ins Co v Auto-Owners Ins Co*, 123 Mich App 675, 682; 333 NW2d 322 (1983).

[6] *Grange Ins Co of Mich v Lawrence*, 296 Mich App 319, 325; 819 NW2d 580 (2012).

[7] *Id.* at 323, 324.

6

resided with both her parents, which is the relevant inquiry under the no-fault act."[8] The Court of Appeals also held that Grange's policy was invalid because the policy, which requires a court adjudication of custody to be conclusive for determining a child's principal residence, would limit Grange's "obligation where the no-fault act does not . . . ."[9]

Grange sought leave to appeal, which this Court granted.[10]

### B. *ACIA v STATE FARM*

In this case, Sarah is the minor child fatally injured in a motor vehicle accident. Sarah's parents, Francis Campanelli and Tina Taylor, were divorced in Michigan in 1995. The original judgment of divorce granted joint legal custody of Sarah and her sister, Ashley, to both parents and "physical custody" to Campanelli, allowing Taylor only reasonable visitation. Additionally, the judgment of divorce contained the following provision:

DOMICILE OF THE MINOR CHILDREN

The domicile or residence of said minor children shall not be removed from the State of Michigan without the prior approval of the

---

[8] *Id.* at 324.

[9] *Id.* at 325.

[10] *Grange Ins Co v Lawrence*, 493 Mich 851 (2012). We directed the parties to address:

(1) whether a person, and in particular the minor child of divorced parents, can have two domiciles for the purpose of determining coverage under MCL 500.3114(1) of the Michigan no-fault act; (2) whether, in answering the first issue, a court order determining the minor's custody has any effect; and (3) whether an insurance policy provision giving preclusive effect to a court-ordered custody arrangement is enforceable. [*Id.*]

7

Court, and that [Campanelli] shall promptly notify the Friend of the Court whenever said children are moved to another address.

A little more than a year after the family court granted the judgment of divorce, Campanelli secured a job in Tennessee that offered a considerable improvement in his career. He moved the family court to modify the original judgment of divorce and successfully obtained an order in February 1996, as the custodial parent, permitting him to change the children's domicile to the state of Tennessee.[11] Under the terms of that order, Taylor was entitled to six weeks of visitation in the summer, and Campanelli and Taylor were to alternate the one-week Easter, Christmas, and winter school vacations. The February 1996 order did not otherwise modify either the joint legal custody originally granted to both parents or the physical custody awarded to Campanelli.

In 2007, when Sarah was 16-years-old, she went to Michigan to stay for the summer with her mother, who lived with Sarah's great-uncle, Terry Gravelle, in Howell, Michigan. During the time that she lived with her mother, Sarah decided that she wanted to get to know Taylor better and, with Campanelli's permission, remained in Michigan with her mother and attended high school that fall.[12]

On November 26, 2007, Sarah was a passenger in a car driven by her friend, Kayla, and insured by State Farm Mutual Automobile Insurance Company (State Farm). Kayla lost control of the car, which careened off the road and into a tree, resulting in

---

[11] The family court's order was entitled "Order Permitting Defendant to Change Children's Domicile to the State of Tennessee."

[12] Taylor provided Sarah with a room of her own in her uncle's home, filed an affidavit of residence with the Howell Public Schools, affirming that Taylor lived in Howell and that Sarah resided with her. Taylor listed Gravelle's address as their residence.

8

what would ultimately be fatal injuries to Sarah. The severe injuries Sarah sustained required medical care. Automobile Club Insurance Association (ACIA), as the insurer of Sarah's uncle, Gravelle, in whose household Sarah resided, paid Sarah's medical bills during the period before her death.[13]

ACIA commenced an action in the circuit court to secure determinations that (1) Sarah was not "domiciled" in Michigan, (2) ACIA, therefore, was not responsible for Sarah's PIP benefits under MCL 500.3114(1), and (3) State Farm, as the insurer of the vehicle in which Sarah was a passenger when she was injured, was the responsible insurer pursuant to the no-fault priority provision of MCL 500.3114(4). State Farm denied liability and both providers filed cross-motions for summary disposition under MCR 2.116(C)(10).

The circuit court granted summary disposition in favor of State Farm, finding that Sarah "had residency in Michigan with her mother and her uncle at the time of the motor vehicle accident."[14] The circuit court noted the conflicting testimony on the issue of

---

[13] In the meantime, Taylor, after learning that Campanelli was planning to have Sarah flown back to Tennessee for medical care, obtained an ex parte order from the Wayne Circuit Court purporting to transfer Sarah's custody to Taylor and her domicile to Taylor's Michigan address. The Wayne Circuit Court later reversed itself on January 7, 2008, vacating the ex parte order and declaring it void *ab initio*. By that time, however, Sarah had passed away from her injuries. Sarah's parents, however, continued to litigate. Taylor sought to open an estate for Sarah in Livingston County Probate Court, contending that Sarah was domiciled in Michigan when she died. After a two-day testimonial hearing, the probate court ruled that, consistent with the provisions of the family court's orders in the divorce proceedings, Sarah was domiciled in Tennessee, not in Michigan, on the date of her death. The probate court entered orders pursuant to its ruling, declaring Sarah to be a "nonresident of Michigan" and giving Campanelli the right to make decisions regarding funeral arrangements for Sarah.

[14] The circuit court concluded that it was not bound by the probate court's determination

9

Sarah's intent to return to Tennessee, but then concluded that the record reflected a "lack of evidence of a clear intent to return to Tennessee . . . ." In support, the circuit court cited the absence of any definite actions by Sarah to withdraw from school in Michigan and reenroll in school in Tennessee, coupled with indications that Sarah regarded her mother's residence as her own. Accordingly, because the circuit court found that Sarah was domiciled in Michigan, it ruled that ACIA was responsible for Sarah's PIP benefits under MCL 500.3114(1).

The Court of Appeals reversed, reasoning that the evidence of Sarah's domicile, and in particular her intent, presented a question of fact for resolution by the jury and that summary disposition was, thus, not proper for either party.[15] The Court of Appeals also rejected ACIA's argument that the judgment of divorce and subsequent February 1996 order modifying domicile conclusively established Sarah's domicile for all purposes. According to the panel, the family court "did not determine Sarah's domicile for the purpose of insurance coverage, and there is no authority that suggests that [the circuit court in the insurance dispute] was required to adopt the ruling of different jurisdictions deciding the issue for a different purpose for different parties."[16]

---

that Sarah was domiciled in Tennessee, see note 13, because the parties to the probate court proceedings were different.

[15] *Auto Club Ins Ass'n v State Farm Mut Auto Ins Co*, unpublished opinion per curiam of the Court of Appeals, issued June 21, 2011 (Docket No. 294324).

[16] *Id*. at 4-5.

State Farm applied to this Court for leave to appeal and ACIA filed a response to that application, as well as a cross-application. We ordered argument on whether to grant the applications or take other action.[17]

## II. STANDARD OF REVIEW

This Court reviews de novo a decision to grant or deny a motion for summary disposition.[18] Summary disposition under MCR 2.116(C)(10) is appropriately granted where no genuine issue of material fact remains and the moving party is entitled to judgment as a matter of law.[19] A domicile determination is generally a question of fact; however, where the underlying material facts are not in dispute, the determination of domicile is a question of law for the circuit court.[20] We likewise review de novo issues of statutory interpretation.[21]

---

[17] *Auto Club Ins Ass'n v State Farm Mut Auto Ins Co*, 491 Mich 875 (2012). We directed the parties to address "whether legal residence and domicile of the insured minor were conclusively established in Tennessee pursuant to the judgment of divorce entered by the Wayne Circuit Court, as amended, or whether the minor had the capacity to acquire a different legal residence or domicile of choice." *Id.*, citing *Vanguard Ins Co v Racine*, 224 Mich App 229, 233; 568 NW2d 156 (1997); MCR 3.211(C)(1) and (3); 8 Mich Civ Jur, Domicile, § 7; Restatement, Conflict of Laws, 2d, §§ 15 and 22(1) comments a and d.

[18] *Elba Twp v Gratiot Co Drain Com'r*, 493 Mich 265, 277; 831 NW2d 204 (2013).

[19] *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996).

[20] *Hartzler v Radeka*, 265 Mich 451, 452; 251 NW 554 (1933).

[21] *Elba Twp*, 493 Mich at 278.

## III. ANALYSIS

Michigan's no-fault act generally abolishes tort liability arising from the ownership, maintenance, or use of a motor vehicle.[22]  Instead, insurance companies are required to provide first party insurance benefits for accidental bodily injury arising out of the use of a motor vehicle, which are commonly referred to as personal protection insurance (PIP) benefits.[23]  In this regard, MCL 500.3114(1), which is at the center of the litigation in both these cases, provides the general rule for determining which Michigan insurer is liable to provide PIP benefits.  The statute provides, in relevant part:

> [A] personal protection insurance policy described in [MCL 500.3101(1)] applies to accidental bodily injury to the person named in the policy, the person's spouse, and a relative of either *domiciled in the same household*, if the injury arises from a motor vehicle accident.[24]

In these cases, the parties dispute whether the injured individual was a relative of the insured who was "domiciled in the same household" as the insured.

In the instance that more than one insurer's policy is applicable to the injured person under this provision, then the priority provision of MCL 500.3115(2) is triggered and may allow an insurer to recoup benefits from other insurer(s) of equal priority.[25]

---

[22] See MCL 500.3105.

[23] MCL 500.3107; MCL 500.3108.

[24] MCL 500.3114(1) (emphasis added).

[25] MCL 500.3115(2) provides:

> When 2 or more insurers are in the same order of priority to provide personal protection insurance benefits an insurer paying benefits due is entitled to partial recoupment from the other insurers in the same order of priority, together with a reasonable amount of partial recoupment of the

This is the legal situation in *Grange*, wherein the lower courts held that Josalyn had two "domiciles" within the meaning of MCL 500.3114(1)—one with Lawrence insured by Grange and another with Rosinski insured by Farm Bureau. Pursuant to MCL 500.3115(2), the lower courts thus concluded that Grange is an insurer of equal priority with Farm Bureau, thereby entitling Farm Bureau to partial recoupment of the PIP benefits that it had paid on Josalyn's behalf.

Comparatively, in some instances no insurer's PIP policy is applicable to the injured person under MCL 500.3114(1) because the person is not "the person named in the policy, the person's spouse, [or] a relative of either domiciled in the same household . . . ." In this event, MCL 500.3114(4) may apply such that the insurer of the accident vehicle is liable for PIP benefits to the occupant of a motor vehicle. MCL 500.3114(4) provides:

> Except as provided in [MCL 500.3114(1)-MCL 500.3114(3)], a person suffering accidental bodily injury arising from a motor vehicle accident while an occupant of a motor vehicle shall claim personal protection insurance benefits from insurers in the following order of priority:
>
> (a) The insurer of the owner or registrant of the vehicle occupied.
>
> (b) The insurer of the operator of the vehicle occupied.

This is the legal posture of *ACIA*, where the dispute involves whether Sarah was "domiciled with a relative" in Michigan for the purposes of MCL 500.3114(1), or instead, whether MCL 500.3114(4) applies. The circuit court concluded that Sarah was domiciled

---

expense of processing the claim, in order to accomplish equitable distribution of the loss among such insurers.

13

in Michigan, thus making ACIA, the insurer of Sarah's uncle with whom she resided in Michigan, liable for PIP benefits rather than State Farm, the insurer of the accident vehicle.

The pivotal inquiry in both these insurance-coverage disputes, then, turns on the interpretation of the term "domiciled" as it is used in MCL 500.3114(1). Mainly, the meaning of "domicile," and specifically how a child's domicile is determined, will dictate the ultimate determination of which insurer is liable for PIP benefits in each case. Our inquiry first addresses the preliminary issue raised only in *Grange*: whether a child of divorced parents injured in a motor vehicle accident can be "domiciled" in more than one household for purposes of the no-fault act. We next consider the question posed in both *Grange* and *ACIA*: whether a family court order pertaining to a child's custody conclusively establishes a child's domicile under the no-fault act.

## A. DOMICILE AND THE NO-FAULT ACT

Notably, the no-fault act does not define the term "domiciled." The unambiguous language of MCL 500.3114(1) simply states that "a personal protection insurance policy . . . applies to accidental bodily injury to the person named in the policy, the person's spouse, and a relative of either *domiciled* in the same household . . . ."[26] When construing this statutory language, our main objective is to discern the Legislature's intent through the language plainly expressed.[27] Normally, this Court will accord an

---

[26] Emphasis added.

[27] *Title Office, Inc v Van Buren Co Treasurer*, 469 Mich 516, 519; 676 NW2d 207 (2004).

undefined statutory term its ordinary and commonly used meaning.[28]  However, where the Legislature uses a technical word that has acquired a particular meaning in the law, and absent any contrary legislative indication, we construe it "according to such peculiar and appropriate meaning."[29]  The term "domicile" is just such a word that has a precise, technical meaning in Michigan's common law, and thus must be understood according to that particular meaning.

For over 165 years, Michigan courts have defined "domicile" to mean "the place where a person has his true, fixed, permanent home, and principal establishment, and to which, whenever he is absent, he has the intention of returning."[30]  Similarly, a person's domicile has been defined to be "'that place where a person has voluntarily fixed his abode not for a mere special or temporary purpose, but with a present intention of making it his home, either permanently or for an indefinite or unlimited length of time.'"[31]  In this regard, the Court has recognized that "[i]t may be laid down as a settled maxim that every man must have such a national domicile somewhere.  It is equally well settled *that no person can have more than one such domicile, at one and the same time*."[32]  From this settled principle, it follows that

---

[28] *Herman v Berrien Co*, 481 Mich 352, 366; 750 NW2d 570 (2008).

[29] MCL 8.3a.

[30] *In re High*, 2 Doug 515, 523 (Mich, 1847).

[31] *Henry v Henry*, 362 Mich 85, 101-102; 106 NW2d 570 (1960), quoting *Williams v North Carolina*, 325 US 226, 236; 65 S Ct 1092; 89 L Ed 1577 (1945) (quotation marks omitted).

[32] *In re High*, 2 Doug at 523 (emphasis added); see also *In re Scheyer's Estate*, 336 Mich 645, 651-652; 59 NW2d 33 (1953) ("One cannot be permanently located in more than 1

15

a man retains his domicile of origin [upon his birth] until he changes it, by acquiring another; and so each successive domicile continues, until changed by acquiring another. And it is equally obvious that the acquisition of a new domicile does, at the same instant, terminate the preceding one.[33]

In this way, our common law has recognized that from the time of a person's birth—from childhood through adulthood—a person can only have a single domicile at any given point in time. Indeed, there are few legal axioms as established as the one providing that every person has a domicile, and that a person may have one—and *only* one—domicile.

In furtherance of this understanding of domicile, the common law has necessarily distinguished between the concepts of "domicile" and "residence:"

The former, in its ordinary acceptation, was defined to be, 'A place where a person lives or has his home,' while '[a]ny place of abode or dwelling place,' however temporary it might have been, was said to constitute a residence. A person's domicile was his legal residence or home in contemplation of law.[34]

Stated more succinctly, a person may have only one domicile, but more than one residence.[35] For purposes of distinguishing "domicile" from "residence," this Court has explained that "domicile is acquired by the combination of residence and the intention to reside in a given place . . . . If the intention of permanently residing in a place exists, a residence in pursuance of that intention, however short, will establish a domicile."[36] The

place; one cannot be domiciled in more than 1 place; one cannot intend to remain for an extended period of time in more than 1 place.").

[33] *In re High*, 2 Doug at 523.

[34] *Gluc v Klein*, 226 Mich 175, 177-178; 197 NW 691 (1924).

[35] *In re Scheyer's Estate*, 336 Mich at 651-652.

[36] *Beecher v Common Council of Detroit*, 114 Mich 228, 230; 72 NW 206 (1897).

16

traditional common-law inquiry into a person's "domicile," then, is generally a question of intent, but also considers all the facts and circumstances taken together.[37]

Returning to the language of MCL 500.3114(1), there is no indication that the Legislature intended to deviate from this well established common-law meaning of the term "domicile." And, because a person, from the moment of his birth onward, can only have one domicile within the traditional meaning of that term, it follows that a child, regardless of his parents' marital status or his multiple legal residences, may also have only one domicile at any given point in time.[38]

Indeed, rather than there being any indication that the Legislature intended to deviate from this common-law rule, there is, in fact, evidence that the Legislature *favored* this single-location rule. Had the Legislature intended to make insurers liable for PIP benefits for dual coexisting "domiciles," then it would have used the term "resided," not "domiciled," because, as previously explained, a person may have more than one residence at a time, but only one domicile. However, the Legislature instead expressly chose to use the more restrictive term, "domiciled," thereby limiting the universe of insurers that are potentially liable under MCL 500.3114(1). In fact, the Legislature specifically rejected use of the term "residence," as used in the uniform act on which the

---

[37] *In re High*, 2 Doug 523-524 ("The question of domicile, is then, a question of fact and intent, and if these elements are found, the reference of the domicile to one place or another depends upon the comparative weight of the circumstances.").

[38] For reasons we explain later in this opinion, the Child Custody Act, MCL 722.21 *et seq.*, which governs the creation of child custody orders, does not abrogate the common-law rule that a person can have only a single domicile and does not create a dual-domicile situation.

17

no-fault act is modeled, in favor of the term "domiciled" in defining those eligible for PIP benefits under MCL 500.3114(1).[39] The Legislature thus affirmatively chose a term that it knew had a particular meaning, and we must accord this legislative choice its full weight when determining the Legislature's intent.

Therefore, given the absence of any indication that the Legislature intended a contrary meaning, the Legislature's use of the term "domiciled," evinces an intent to incorporate all those common-law legal concepts related to that term, including the law of domicile as it relates to minors more fully addressed below. Accordingly, consistent with the traditional common-law principle that a person may have only one domicile at a given point in time, we hold that a child, whose parents are divorced and who has more than one legal residence, may have only a single domicile at any one point in time that continues until the child acquires a different one.

Farm Bureau, however, suggests that we should reach the opposite conclusion— that a child of divorced parents who has two legal residences may also have two coexisting domiciles, one with each parent. In support, Farm Bureau, like the Court of Appeals in *Grange*, asserts that our decision in *Workman* specifically recognized

---

[39] This Court has acknowledged that the no-fault act is modeled after the Uniform Motor Vehicle Reparations Act, see *MacDonald v State Farm Mut Ins Co*, 419 Mich 146, 151; 350 NW2d 233 (1984). Section 1(a)(3)(ii) of 14 ULA, Civil Procedural and Remedial Laws, Uniform Motor Vehicle Accident Reparations Act, p 43, includes those "*residing* in the same household with a named insured" within the definition of "basic reparation insured," of whom are eligible for benefits. See *id*. at § 4(b), p 56. In other words, under the model act, a person need only *reside* in the same household as the policy holder to be considered a basic reparation insured who may claim benefits against the policyholder's insurance company. *Id*. at 57.

18

"residence" and "domicile" to be legally synonymous for purposes of MCL 500.3114(1), meaning that, just as a person can have more than one residence, a person can also have more than one "domicile." In *Workman*, the seminal case in which we interpreted the phrase "domiciled in the same household" as used in MCL 500.3114(1), we considered whether the claimant, the insured's adult daughter-in-law, was domiciled in the same household as the insured. After noting that no caselaw interpreted the phrase, "domiciled in the same household," we articulated a flexible multi-factor test to aid courts in determining domicile, in which no one factor is determinative.[40] The factors to be considered included:

> (1) the subjective or declared intent of the person of remaining, either permanently or for an indefinite or unlimited length of time, in the place he contends is his "domicile" or "household; (2) the formality or informality of the relationship between the person and the members of the household; (3) whether the place where the person lives is in the same house, within the same curtilage or upon the same premises, (4) the existence of another place of lodging by the person alleging "residence" or "domicile" in the household . . . .[41]

---

[40] *Workman*, 404 Mich at 495-496.

[41] *Id*. at 496-497 (citations omitted). Later, in *Dairyland Ins Co v Auto-Owners Ins Co*, 123 Mich App at 682, the Court of Appeals added five more factors relevant for determining no-fault domicile, with a particular focus on adult children of an insured who may have complicated living arrangements:

> Other relevant indicia of domicile include such factors as [1] whether the claimant continues to use his parents' home as his mailing address, [2] whether he maintains some possessions with his parents, [3] whether he uses his parents' address on his driver's license or other documents, [4] whether a room is maintained for the claimant at the parents' home, and [5] whether the claimant is dependent upon the parents for support.

In articulating this test, the Court stated:

> Although the statutory language of [MCL 500.3114(1)] refers to persons "*domiciled* in the same household" as an insured, we believe this body of law [that deals with the question of whether a person is a 'resident' of an insured's 'household' under particular insurance policies,] is analytically applicable to the consideration before us. We conclude this because, in this state, *the terms "domicile" and "residence" are legally synonymous (except in special circumstances).*[42]

It is this final phrase—"the terms 'domicile' and 'residence' are legally synonymous"—on which Farm Bureau and the Court of Appeals rely. This statement, however, when read in context of the entire opinion, does not stand for the proposition that domicile is the equivalent of residence under MCL 500.3114(1). Rather, *Workman* merely acknowledged that, generally, "residence" has sometimes been given the equivalent meaning of "domicile." *Workman* did not, however, establish that interpretation as an absolute rule. Indeed, this point is bolstered by the cases *Workman* cites in support of its statement that "the terms 'domicile' and 'residence' are legally

---

The *Workman-Dairyland* multifactored framework comprises the one now commonly employed by Michigan courts when a question of fact exists as to where a person is domiciled.

[42] *Workman*, 404 Mich at 495 (second emphasis added). In support of the statement, "the terms 'domicile' and 'residence' are legally synonymous," *Workman* provides the following in footnote 4, *id*. at 495 n 4:

> *Gluc v Klein*, 226 Mich 175, 178; 197 NW 691 (1924); *Hartzler v Radeka*, 265 Mich 451, 452; 251 NW 554 (1933); *Reaume & Silloway, Inc v Tetzlaff*, 315 Mich 95; 23 NW2d 219 (1946). For an example of such a "special circumstance", see *School District No 1, Fractional, of Mancelona Twp v School District No 1 of Custer Twp*, 236 Mich 677, 681; 211 NW 60 (1926); *Ortman v Miller*, 33 Mich App 451, 458; 190 NW2d 242 (1971).

20

synonymous." *Workman* first cited to *Gluc v Klein*,[43] where this Court recognized the traditional common-law distinction between "residence" and "domicile," but noted that sometimes the Legislature has given residence the same meaning as domicile. We later made the same point in both *Hartzler v Radeka*[44] and *Reaume & Silloway, Inc v Tetzlaff*.[45] Further, the two cases *Workman* cited as "special circumstances" in which "domicile" and "residence" *are not* synonymous both involved determining a minor's domicile for purposes of applying relevant statutes.[46]

However, the corollary—that domicile has sometimes been given the same meaning as residence—is simply not true. This Court has never interpreted "domicile" to be the equivalent of "residence," as demonstrated by the cases *Workman* cites and the preceding discussion regarding the common-law meaning of domicile. Indeed, *Workman* itself cannot reasonably be interpreted to advocate such a conclusion, given that *Workman* adopts a multifactor domicile test that is analytically the same as the traditional domicile test employed for more than a century at common law. Stated otherwise,

---

[43] *Gluc*, 226 Mich at 175, 178.

[44] *Hartzler*, 265 Mich at 451, 452.

[45] *Reaume & Silloway, Inc*, 315 Mich at 95, 99.

[46] See *Sch Dist No 1 Fractional of Mancelona Twp*, 236 Mich at 681 (concluding that the Legislature, in the context of a school statute, intended to give the terms "residence" and "domicile" their traditional, distinctive common-law meanings); and *Ortman*, 33 Mich App at 458 (reaching the same conclusion in the context of a motor vehicle accident claims fund statute).

21

*Workman* is entirely consistent with our conclusion that the term "domicile" is to be interpreted the same as its common-law meaning.

Our holding thus clarifies, that to the extent that *Workman* has been understood to imply that "domicile" and "residence" retain no independent significance for the purposes of the no-fault act, such a conclusion is not valid and that "domicile" must be understood consistent with its historical underpinnings. Further, although *Workman* recognized that "domicile" and "residence" are often used interchangeably by the Legislature in other contexts and, therefore described the terms as synonymous in those situations, *Workman* also explained that it is often necessary to distinguish between the terms consistent with the Legislature's intent, as in the instant case.[47]

The Court of Appeals in *Grange* therefore erred by interpreting *Workman* to mean that domicile is the equivalent of residence and that a minor child can be "domiciled" for purposes of MCL 500.3114(1) in multiple residences.[48] Neither *Workman* nor the plain

---

[47] Similarly, see *Feaster v Portage Pub Sch*, 451 Mich 351, 356; 547 NW2d 328 (1996) (quoting *Feaster v Portage Pub Sch*, 210 Mich App 643, 657; 534 NW2d 242 (1995), rev'd 451 Mich 351 (1996), in turn citing *Sch Dist No 1 Fractional of Mancelona Twp*, 236 Mich at 681-682), where this Court more recently reasserted the legal difference between the terms "domicile" and "residence" in the context of applying school statutes to minor children, concluding that "[i]t is well established that residency for educational purposes is not the equivalent of legal domicile." Likewise, construing "domicile" and "residence" as synonymous under the no-fault act would entirely defeat the specific legislative choice to employ the more restrictive term "domiciled" in place of broader term "resided."

[48] For this same reason, Farm Bureau's suggestion that this Court follow the holding of a Sixth Circuit Court of Appeals case, *Walbro Corp v Amerisure Cos*, 133 F3d 961 (CA 6, 1988), is unavailing. In *Walbro*, the Sixth Circuit interpreted *Workman* to permit dual domiciles where the minor child had a legal residence with both parents as a result of a

---

language of MCL 500.3114(1) support this conclusion. The Court of Appeals' holding in *Grange*, and Farm Bureau's adherence to that position, is plainly inconsistent with our jurisprudence regarding the meaning of "domicile" and the clear language of MCL 500.3114(1) which, as we have explained, incorporates the common-law meaning of that term.

## B. DETERMINING A CHILD'S DOMICILE

Our holding, that a child may have only one domicile at any one time consistent with traditional common-law principles, does not establish how a child's single domicile is determined. *Workman* and its progeny applying the traditional domicile test defined domicile in relation to an adult but, for reasons that we will explain, these factors are not helpful in determining a child's domicile. To resolve how a child's domicile is determined—and given our conclusion that the Legislature intended that the term "domiciled," as used in MCL 500.3114(1), be interpreted consistent with its common-law meaning—we further consider the law of domicile as it pertains to minors.

### i. THE COMMON LAW OF DOMICILE PERTAINING TO MINORS

Our common law recognizes three means of acquiring a domicile, which are generally applicable to all persons depending on the factual circumstances, including: (1) domicile of origin or of nativity; (2) domicile of choice; and (3) domicile by operation of

---

joint legal and physical custody order. Aside from its lack of any precedential value, *Walbro* misconstrued *Workman* and the statutory language of MCL 500.3114(1) in the same manner as the Court of Appeals in *Grange* as permitting a person to have more than one domicile at a given point in time. *Walbro* also wrongly applied, for reasons we explain later in this opinion, the *Workman* domicile factors to determine the child's domicile.

law.[49]  A domicile of origin or of nativity is established when a person is born, fulfilling the maxim that every person has a domicile from the time of birth.[50]  Meanwhile, a domicile by choice occurs when a person replaces his current domicile by choosing another, consistent with the proposition that every person must have a domicile until a new domicile is determined.  Finally, a domicile by operation of law occurs when a person with a legal disability lacks the capacity to acquire a domicile of choice, and thus the domicile is established by operation of law.[51]

Typically, as indicated in the preceding discussion and demonstrated by the *Workman* factors, an adult acquires a new domicile by choosing one of his or her choice, which makes the question of intent a preeminent concern in determining an adult's domicile.  One of the requisites for acquiring a domicile of choice, then, is the *legal capacity* necessary to form the intent required to select a new domicile.[52]

---

[49] 8 Mich Civ Jur, Domicile, § 1.

[50] See *In re High*, 2 Doug at 523-524.

[51] Restatement, Conflict of Laws, 2d, §§ 22, 23; 8 Mich Civ Jur, Domicile, § 5.

[52] Comments a and b of the Restatement, § 15 provide:

> a. Requirements for acquisition of domicil of choice.  The requirements for acquiring a domicil of choice are (1) *legal capacity to do so*, (2) physical presence as described in § 16 and (3) the existence of the attitude of mind described in § 18 toward the place in question. . . .
>
> b. A person may acquire a domicil of choice if
>
> (1) having had a domicil by operation of law, such as a domicil of origin, he acquires a domicil of choice in a place other than his former domicil; or

Regarding children, a child's ability to acquire a new domicile is limited in ways that an adult's ability to acquire a domicile is not. This is because, for purposes of our legal system, an unemancipated child, unlike a competent adult, lacks the legal capacity to make legally binding determinations for him or herself and, therefore, a child lacks the *capacity* to acquire a domicile of choice.[53] Thus, while intent is critical for determining the domicile of an adult, a child's intent regarding domicile is simply irrelevant, and the traditional factors applied in determining an adult's domicile are likewise irrelevant. Instead, the child's domicile is determined by reference to the domicile of his or her parents.[54] For instance, our common law has recognized that when a child is born, the child acquires a domicile of origin, which is that of his father.[55] The child's domicile of

---

(2) having had a domicil of choice in one place, he acquires a new domicil of choice in another place. [Emphasis added.]

[53] See *id*. It is basic black letter law that an unemancipated minor lacks the legal capacity to acquire a domicile of choice. See *Yarborough v Yarborough*, 290 US 202, 211; 54 S Ct 181; 78 L Ed 269 (1933) ("[Minor child] was not capable by her own act of changing her domicile."); *Miss Band of Choctaw Indians v Holyfield*, 490 US 30, 48; 109 S Ct 1597; 104 L Ed 2d 29 (1989) ("[M]ost minors are legally incapable of forming the requisite intent to establish a domicile . . . ."). Our Legislature has recognized that unemancipated minors lack the necessary legal capacity to acquire a domicile of choice by expressly granting emancipated minors "the right to establish a separate domicile." MCL 722.4e(1)(d).

[54] See *Holyfield*, 490 US at 48 ("[Generally, a child's] domicile is determined by that of their parents."); see also *Lamar v Micou*, 112 US 452, 470; 5 S Ct 221; 28 L Ed 751 (1884) (stating the general rule that the domicile of an infant follows that of his father).

[55] See *In re High*, 2 Doug at 523-524 (recognizing that a child acquires a domicile of origin upon birth that is the same as his parents); *Hering v Mosher*, 144 Mich 152, 154; 107 NW 907 (1906) (noting that a child's domicile of origin is the same as his father's domicile).

origin remains the child's domicile until a new domicile is acquired through the actions of the child's parents or until that point in time when the minor, either through emancipation or by reaching the age of majority, can acquire a domicile of choice.[56]

The inquiry into a child's domicile becomes more complicated when the child's parents are divorced. Our common law, however, has accounted for these types of familial situations. Specifically, nearly a century ago in *In re Volk*,[57] this Court considered the domicile of a child for purposes of determining whether Michigan courts must accord full faith and credit to Ohio judgments pertaining to a child. In that case, the parents of the minor child had previously lived in Ohio, but after their divorce the mother established a new domicile in Michigan. The Court explained:

> [U]nder the decree of divorce, the mother was given [the child's] unrestricted custody. *His domicile thereafter became that of his mother*, and, when she removed to this State and became domiciled here, the domicile of the child was in Michigan.[58]

---

[56] See *In re High*, 2 Doug at 524 (explaining that a child who "was born in Vermont, about the year 1812, where he continued to reside with his parents, who were domiciled there, until he went south some time prior to 1832, and before he had attained the age of twenty-one[,]" was domiciled in Vermont, as "Vermont, then, was *the domicile of his birth or nativity . . . and it continued to be his domicile until he acquired another,* which he could not do until he arrived at full age . . . ." [emphasis added]). Indeed, in the instance where a child's parents remain married, when the parents acquire a new domicile of choice, the child also acquires that same domicile consistent with the parents' intent. Under these circumstances, because the child's domicile is determined in relation to his parents' domicile, the *Workman* factors remain relevant only to the extent that they are used to determine the parents' intentions. See *Holyfield*, 490 US at 48.

[57] *In re Volk*, 254 Mich 25; 235 NW 854 (1931), overruled in part on other grounds by *Hentz v Hentz*, 371 Mich 335 (1963).

[58] *In re Volk* at 31-32 (emphasis added).

By acknowledging that the child's domicile changed by operation of law as a result of the decree of divorce, this Court expressly recognized that a child's domicile, upon the divorce or separation of the child's parents, is the same as that of the parent to whose custody *he has been legally given* pursuant to a custody order.[59] More simply put, *In re Volk* held that a custody determination is determinative of a child's domicile.[60] Under our common law, then, a child's domicile upon the divorce of his parents and entry of a custody order is established by operation of law consistent with the terms of the custody order.

We reaffirm these common-law principles and, in doing so, we emphasize that domicile is a singular concept. Just as a person does not have two domiciles, a person likewise does not have a domicile set by operation of law for some purposes and perhaps a different domicile for other purposes—such as for consideration under the no-fault act or any other statute that uses the term "domicile." A person's domicile for one purpose is his domicile for all purposes; similarly, a child does not have a domicile set by court

---

[59] The United States Supreme Court recognized the same principle in *Yarborough*, 290 US at 211, when it indicated that the child's "domicile continued to be [the same as her father's] until entry of the [divorce] judgment in question [which granted the mother custody of the child]." Likewise, the Restatement, § 22, comment d states in part, "A child's domicil, in the case of the divorce or separation of his parents, is the same as that of the parent to whose custody he has been legally given."

[60] *In re Volk*, 254 Mich at 31-32. Similarly, and more recently, in *Vanguard Ins Co v Racine*, 224 Mich App 229, 233; 568 NW2d 156 (1997), the Court of Appeals noted that a party has only one domicile, and, in the case of a minor child of divorced parents, the one domicile would be that parent's home where the minor "spent the majority of his time and where [the parent] had *physical custody . . . under the divorce judgment*." (Emphasis added.)

27

order only for certain purposes, but not others.[61] The Legislature made a deliberate choice in selecting the term "domiciled" in Michigan's no-fault act, and where domicile is set by operation of law, that determination must be given full legal effect.

Our analysis could end with articulation of this common-law rule and affirmation of these principles. We would be remiss, however, not to acknowledge that child custody orders are created pursuant to the provisions of the Child Custody Act,[62] which was enacted 40 years after *In re Volk* was decided. Consequently, because we have concluded that MCL 500.3114(1) incorporates the common law of domicile, which provides that a custody order is determinative of a child's domicile, it is necessary to further consider whether the Child Custody Act is consistent with this common-law directive. We conclude that the Child Custody Act *is consistent* with the common-law rule and that the Act's provisions enforce the traditional determinations regarding what entities have the *legal capacity* to establish a minor child's domicile.

## ii. THE CHILD CUSTODY ACT AND DOMICILE

The Child Custody Act governs the creation of child custody orders and provides a comprehensive statutory scheme for resolving custody disputes.[63] With it, the

---

[61] In an effort to avoid creating a two-domicile situation under its rebuttable presumption test, i.e., the concurrence would allow a child to have one domicile for purposes of the no-fault act and another different domicile in the family law context, the concurrence argues that the family court lacks the authority to determine a minor child's domicile in its custody orders. This position, however, conflicts with the concurrence's rebuttable presumption test, which recognizes the family court's authority in this regard by treating the custody order as presumptive evidence of a minor child's domicile.

[62] Child Custody Act, MCL 722.21 *et seq.*

[63] MCL 722.26.

Legislature has sought to promote the best interests of children, which is the hallmark of any custody order. To this end, the Legislature has charged courts, in any dispute regarding custody, with "declar[ing] the child's inherent rights and establish[ing] the rights and duties as to the child's custody . . . in accordance with this act."[64]

At the outset, we note that the Child Custody Act is consistent with the notion that a child may have only a single domicile at any given point in time. Nowhere does the Child Custody Act indicate that a child may have dual domiciles, as Farm Bureau suggests. Rather, while the Child Custody Act permits a child to have a "legal residence with each parent," that language serves merely as an acknowledgment that a child may have more than one *residence*.[65] Absent an express indication that the Legislature intended a different result, we will not presume that the Legislature intended to modify the common-law rule applicable to children and adults alike that a person may have only a single domicile at a given point in time.[66]

---

[64] MCL 722.24(1).

[65] See MCL 722.31, which pertains to the requirements necessary to change a child's residence, and provides in part that "[a] child whose parental custody is governed by court order has, for the purposes of this section, a legal residence with each parent." Notably, the caselaw addressing disputes related to motions for a change of residency also interchangeably describe these motions as motions for a change of domicile. See *Rains v Rains*, 301 Mich App ___; ___ NW2d ___ (2013); *McKimmy v Melling*, 291 Mich App 577, 580-582; 805 NW2d 615 (2011). The courts loose use of the terms "residency" and "domicile" in the context of motions to change residency under MCL 722.31, however, has no impact on the Legislature's express decision to use the term "residence," as opposed to domicile, and does not inform the meaning of the Child Custody Act.

[66] See Const 1963, art 3, § 7 (indicating that the common law remains in force until it is "changed, amended or repealed"); see also *Dawe v Dr Reuven Bar-Levav & Assocs, PC*,

29

However, no provision of the Child Custody Act expressly provides that an order establishing custody or domicile is conclusive evidence of a child's domicile for purposes of the no-fault act or otherwise. Moreover, the Act allows for myriad possible scenarios in postdivorce familial relationships, recognizing different combinations of legal and physical custody, and offering flexibility in terms of parenting time arrangements.[67] Ultimately though, we believe that the Child Custody Act and related court rules lend further support to the conclusion that a child's domicile is established by a custody determination of the family court because that entity is the single entity entrusted by our laws with the *capacity* to determine domicile under these circumstances.

Once a custody order is entered pursuant to a judgment of divorce or otherwise, that custody order is legally binding on the parents and the order cannot be modified absent court approval or compliance with the applicable provisions of the Child Custody

485 Mich 20, 28; 780 NW2d 272 (2010) ("[T]he Legislature 'should speak in no uncertain terms' when it exercises its authority to modify the common law.").

[67] For example, MCL 722.26a recognizes the possibility of "joint custody," which may consist of either joint physical custody or joint legal custody or both joint physical and legal custody. MCL 722.26a(7) defines "joint custody" to mean

an order of the court in which 1 or both of the following is specified:

(a) That the child shall reside alternately for specific periods with each of the parents.

(b) That the parents shall share decision-making authority as to the important decisions affecting the welfare of the child.

"Although not specifically designated in the statute, the custody described in [MCL 722.26a(7)(a)] is commonly referred to as joint physical custody, and that described in [MCL 722.26a(7)(b)] is referred to as joint legal custody." *Dailey v Kloenhamer*, 291 Mich App 660, 670; 811 NW2d 501 (2011).

Act.[68]  Because parents are legally bound by the terms of the custody order, the order therefore negates the parents' legal capacity, which is necessary to establish a domicile of choice for the minor child that is different from that established in the custody order. Specific provisions of the Child Custody Act support the notion that a parent's ultra vires acts do not, as a matter of law, effect a change in a child's court-ordered domicile: If a parent wishes to modify a custody order, the Act requires a parent to move for modification of the custody order and to demonstrate a proper cause or change of circumstances related to the established custodial environment.[69]  And, in the instance that a parent seeks to change the child's legal residence, the parent is prohibited from moving a child across state lines without court approval and, in some situations, is prohibited from moving the child more than 100 miles without prior court approval.[70]

---

[68] See *Harvey v Harvey*, 470 Mich 186, 194; 680 NW2d 835 (2004) (indicating that custody orders are binding once entered by court order); *Brausch v Brausch*, 283 Mich App 339, 354; 770 NW2d 77 (2009) (indicating that a family court's custody order is valid and binding for all purposes until properly set aside or otherwise modified).

[69] See MCL 722.27(1)(c), which indicates that a family court may "modify or amend its previous judgments or orders for proper cause shown or because of change of circumstances until the child reaches 18 years of age . . . [and that the] court shall not . . . change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child."

[70] See MCL 722.31, which provides in relevant part:

> (1) A child whose parental custody is governed by court order has, for the purposes of this section, a legal residence with each parent.  Except as otherwise provided in this section, a parent of a child whose custody is governed by court order shall not change a legal residence of the child to a location that is more than 100 miles from the child's legal residence at the time of the commencement of the action in which the order is issued.

Therefore, that parents are legally bound by custody orders mandates the conclusion that a child's domicile is established by the court order as a matter of law.[71]

We thus believe that our prior conclusion—that in the instance where a child's parents are divorced, the family court's custody order entered pursuant to the Child Custody Act establishes the child's domicile by operation of law and is determinative of the child's domicile for purposes of the no-fault act—is consistent with the Child

---

(2) A parent's change of a child's legal residence is not restricted by subsection (1) if the other parent consents to, or if the court, after complying with subsection (4), permits, the residence change. This section does not apply if the order governing the child's custody grants sole legal custody to 1 of the child's parents.

See also MCR 3.211(C)(3), which provides:

A judgment or order awarding custody of a minor must provide that

(1) the domicile or residence of the minor may not be moved from Michigan without the approval of the judge who awarded custody or the judge's successor,* * *

(3) a parent whose custody or parenting time of a child is governed by the order shall not change the legal residence of the child except in compliance with section 11 of the Child Custody Act, MCL 722.31.

[71] The concurrence acknowledges that parents are legally bound by custody orders, but then concludes that parents retain the ability to establish a minor child's domicile in contravention of a custody order. This reasoning—and the rebuttable presumption test that stems from it—departs from established principles of Michigan's domiciliary common law and statutory law and, instead, is based on the concern that domicile dictated by a custody order may not be aligned with the minor child's actual living arrangements. This approach is not supportable in our law and we decline to give legal effect to the fact that a child's living situation may not be consistent with the custody order.

Custody Act itself.[72]  This holding gives the best effect to the provisions of the Child Custody Act, which entrusts courts with making custody determinations in a child's "best interests," including those related to living arrangements.  Any contrary rule could foster noncompliance with custody orders entered under the Child Custody Act by implicitly sanctioning conduct that might establish a minor child's domicile in contravention of a controlling custody order.  Instead, adherence to the rule that the custody order controls the determination of a minor child's domicile encourages compliance with legally binding court orders and statutory law.

Therefore, courts presiding over an insurance coverage dispute involving the minor child of divorced parents must treat a custody order as conclusive evidence of a child's domicile.[73]  Where a court order sets a child's custody or domicile by operation of law, the factual circumstances or the parents' or child's intentions are irrelevant to the domicile determination.[74]  Rather, the appropriate analysis is focused on the terms of the

---

[72] We recognize that parents often reach informal agreements concerning custody matters or, having established a formal arrangement through court order, may through mutual agreement decide to deviate from that arrangement such that a child's living situation is not aligned with the custody order.  Our holding does not, in reality, restrict parents in their ability to address custody arrangements in these regards, but courts should be cognizant that parents' informal modifications to the custody arrangement established in a custody order have no effect on a child's domicile.

[73] Despite this clear directive, the concurrence argues that our holding injects uncertainty into the realm of no-fault law.  We believe that it is the concurrence's rebuttable presumption test that would create uncertainty because it would require insurers to evaluate parents' claims of domicile or leave an insurer guessing regarding its risk of exposure to liability.

[74] A domicile set by operation of law—for example, by court order—obviates the need to engage in an analysis of the *Workman-Dairyland* factors, which were designed to help determine a person's domicile when it was an open or contested question.

custody order.  In directing courts to abide by the custody order, we are cognizant that the Child Custody Act draws a distinction between physical custody and legal custody: Physical custody pertains to where the child shall physically "reside," whereas legal custody is understood to mean decision-making authority as to important decisions affecting the child's welfare.[75]  Because the focus under our common law with respect to domicile mostly concerns a question of location and the same is true with respect to a child's domicile in the instance that the parents are divorced,[76] the relevant consideration is which parent has *physical custody* under the terms of the order.[77]  By way of example, a child's domicile will be with a parent if the custody order grants that parent primary or sole physical custody, or expressly establishes domicile with that parent through a domicile provision, regardless of whether the parents share joint legal custody.[78]

---

[75] Compare MCL 722.26a(7)(a) (physical custody) with MCL 722.26a(7)(b) (legal custody).

[76] See *In re Volk*, 254 Mich at 31-32, which determined that a child's domicile was with that parent who had been given physical custody of the child.

[77] We recognize that a custody order may allow for reasonable or flexible parenting time. However, the physical-custody inquiry, which governs the domicile determination, has to do with the child's primary physical location under the express terms of the custody order and not with how the order allots "parenting time."  Indeed, by allowing for reasonable or flexible parenting time in a custody order, a family court has not relinquished its authority to establish the physical custody of the minor child.

[78] Although not presently before this Court, we recognize that determining domicile by reference to a custody order may appear to lead to a perplexing result where the order grants each parent joint physical custody under MCL 722.26a(7) *and* creates an equal 50/50 division of physical custody.  To begin with, we emphasize that an award of joint physical custody alone does not automatically create this potentially perplexing situation because although an order may award joint physical custody, it may also establish that one parent has *primary* physical custody.  Alternatively, the details of the physical custody division may reveal that one parent has physical custody of the child more often

34

## C. APPLICATION

### i. *GRANGE v LAWRENCE*

When the family court entered the 2005 judgment of divorce between Lawrence and Rosinski, their child Josalyn acquired a domicile by operation of law consistent with the terms of the judgment of divorce. Specifically, the order granted Lawrence and Rosinski joint legal custody, while Rosinski was granted primary physical custody and Lawrence liberal parenting time. Because the order granted Rosinski primary physical custody, Josalyn's domicile was with Rosinski. So long as Josalyn lacked the legal capacity to acquire a new domicile of choice and neither of her parents successfully moved to modify the order through a motion to change custody or residence under MCL 722.27 or MCL 722.31 in a family court of continuing jurisdiction, Josalyn's domicile would remain with Rosinski pursuant to the terms of the judgment of divorce.

---

than the other parent despite the joint physical custody arrangement. Thus, it is only in the very rare event that a custody order awards joint physical custody *and* grants both parents an equal amount of time to exercise physical custody that this issue arises. Indeed, MCL 722.26a(7) does not require that parents share *equal* physical custodial time for a court to award joint physical custody; rather, [MCL 722.26a(7)(a)] merely defines joint physical custody as an order "[t]hat the child shall reside *alternately for specific periods* with each of the parents." Emphasis added. The statute does not, however, require that the child reside with each parent for an *equal* amount of time to constitute joint physical custody.

In the unusual event that a custody order *does* grant an equal division of physical custody, and only in this instance, then the child's domicile would alternate between the parents so as to be the same as that of the parent with whom he is living at the time. Restatement, § 22 (1971). Thus, the child's domicile is with the parent who has physical custody as established by the custody order at the specific time of the incident at issue. This approach is consistent with the terms of the custody order and avoids a finding that the child has dual coexisting domiciles. Such a rule is consistent with *In re Volk* and retains our traditional understanding that a person can only have one domicile at a time.

At the time of the accident in 2009 the judgment of divorce had never been modified pursuant to the provisions of the Child Custody Act. Nor had Josalyn reached the age of majority or become emancipated, such that she could acquire a different domicile of her own choosing. Therefore, at the time of the accident, Josalyn's domicile was with Rosinski pursuant to the terms of the judgment of divorce. In reaching the contrary conclusion that Josalyn was domiciled with both parents, the lower courts erred by concluding that a person could have dual domiciles, erred by failing to recognize the legal effect of the family court's custody order, and erred by applying the *Workman* factors that are inapplicable to a person whose domicile is set by operation of law.

Therefore, because Josalyn can only have one domicile, it follows that she was not domiciled with Lawrence, Grange's insured. The terms of the judgment of divorce provide conclusive evidence of Josalyn's domicile and, there being no ambiguity in that order, there is no question of fact that Josalyn was domiciled in Rosinski's household. It further follows that because Josalyn was not domiciled with Lawrence, Grange is not liable for Josalyn's PIP benefits under MCL 500.3114(1). For this same reason, Grange is not an insurer of equal priority with Farm Bureau and, thus, Grange is not required to reimburse Farm Bureau under MCL 500.3115(2) for the PIP benefits it paid for Josalyn's care following her accident.[79] The lower courts therefore erred by denying Grange summary disposition.

---

[79] Given our holding that a custody determination of a minor child governs domicile, Farm Bureau's argument that Grange's policy conflicts with the no-fault act is unavailing. Recall that the pertinent portion of Grange's policy states: "If a court has adjudicated that one parent is the custodial parent, that adjudication shall be conclusive with respect to the minor child's principal residence." This provision is plainly consistent

In *ACIA*, the 1995 judgment of divorce granted Taylor and Campanelli joint legal custody, Campanelli primary physical custody, and, in an express domicile provision, established Sarah's domicile in Michigan with Campanelli. Upon entry of this order, Sarah's domicile was established by operation of law and her parents no longer had the legal capacity to establish a different domicile of choice on Sarah's behalf, and nor could Sarah, not having reached the age of majority and not being emancipated, acquire a new domicile of her own choosing. Campanelli, however, successfully moved for a change of residency in 1996 and the family court entered an order modifying the judgment of divorce by changing Sarah's domicile to Tennessee. Taylor and Campanelli retained joint legal custody and Campanelli retained primary physical custody. Sarah's domicile, then, was changed by operation of law to Tennessee upon entry of the 1996 order.

There is no dispute that the 1996 order expressly establishing Sarah's domicile in Tennessee remained in effect at the time of the accident in 2007, when Sarah was only 16 years of age. Although Sarah was then residing with her mother in Michigan, Sarah was domiciled in Tennessee at the time of the accident as established by the 1996 order. There being no question of fact as to Sarah's domicile in Tennessee, it is clear that ACIA, the insurer of the Michigan household, is not liable for Sarah's PIP benefits under MCL 500.3114(1). Instead, State Farm is the insurer in first priority to pay PIP benefits, and the lower courts thus erred by denying ACIA summary disposition.

---

with our holding and does not, as the Court of Appeals held, restrict coverage that otherwise would have been permitted under the no-fault act.

37

## IV. CONCLUSION

It has long been established in our common law that a person, including a child, may have only a single domicile at any one time. We reaffirm this principle and hold that a child of divorced parents who may have more than one legal residence, nevertheless still has only one domicile at a given point in time, including for purposes of the no-fault act. In the instance that the child's parents are divorced and a family court has entered an order relating to custody, we hold, consistent with our common law and the Child Custody Act, that the child's domicile is established by operation of law and that the custody order is determinative of the child's domicile for purposes of the no-fault act.

In *Grange*, the judgment of divorce conclusively established the minor child's domicile with her mother at the time of the accident and, thus, Grange is not liable for providing PIP benefits following the child's automobile accident. Accordingly, we reverse the judgment of the Court of Appeals in *Grange* and we remand to the circuit court for entry of summary disposition in favor of Grange.

In *ACIA*, the custody order conclusively established the minor child's domicile with her father at the time of the accident and, thus, ACIA is not liable for providing PIP benefits following the child's automobile accident. We thus reverse the judgment of the Court of Appeals and we remand to the circuit court for entry of summary disposition in favor of ACIA.

Mary Beth Kelly
Robert P. Young, Jr.
Michael F. Cavanagh
David F. Viviano

STATE OF MICHIGAN

SUPREME COURT


GRANGE INSURANCE COMPANY OF
MICHIGAN,

       Plaintiff/Counterdefendant-
       Appellant,

v                                                                    No. 145206

EDWARD LAWRENCE, Individually and
Joint Personal Representative of the Estate of
Josalyn A. Lawrence, and LAURA
ROSINSKI, Individually and Joint Personal
Representative of the Estate of Josalyn A.
Lawrence,

       Defendants-Appellees,
and

FARM BUREAU GENERAL INSURANCE
COMPANY OF MICHIGAN,
       Defendant/Counterplaintiff-
       Appellee.

_____

AUTOMOBILE CLUB INSURANCE
ASSOCIATION,

       Plaintiff-Appellee/Cross-
       Appellant,

v                                                                    No. 143808

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

       Defendant-Appellant/Cross-
       Appellee,
and

ALLSTATE INSURANCE COMPANY,

        Defendant.

_____

ZAHRA, J. (*concurring*).

I concur in the result reached by the majority in these cases. I also agree with the majority that a person, including a minor child, can have only one domicile at any given time. I disagree, however, with the rule the majority has adopted for determining the domicile of a child with two legal residences under the Child Custody Act[1] for several reasons. The majority holds that the domicile of a child with two legal residences is necessarily equated with a family court order establishing physical custody of that child, regardless of whether the parents in fact follow the family court's order. Although this rule appears to have the benefit of reaffirming the legally binding nature of a custody order, such a perfunctory rule falls far short of addressing the practical realities of post-divorce familial relationships.

The majority assumes that physical custody orders are the same as domicile determinations as a matter of law.[2] I question this assumption. Instead, I believe the Child Custody Act grants the family court the authority to establish the *custodial*

_____

[1] MCL 722.21 *et seq*.

[2] The majority is equating *physical* custody with domicile by operation of law, despite the fact that a child whose parents share, at a minimum, joint legal custody has a legal residence with each parent. While in the overwhelming number of cases it may turn out that a child's domicile is the same as that indicated by the custody order, in my view, a custody order does not have the effect of creating domicile, instead it creates the custodial environment from which domicile can be established. See part I(C).

2

*environment(s)* of the child or children subject to that order. It is from this custodial environment that the legal determination of domicile can be made.

I also disagree that a family court order of joint physical custody can establish an alternating domicile system, whereby the minor child's domicile is wherever the custody order indicates the child is supposed to be. Such a system is a semantic end-run around our traditional rule that a person may only have one domicile and ignores the practical reality that in virtually all cases, a child will have a primary residence that will constitute the child's domicile.

I conclude that the majority's rule unduly impinges on the ability of an insurer to accurately assess its risks when entering insurance agreements and places an unreasonable burden on insurers to inquire about, obtain, and interpret family court orders. This is because the majority rule places no-fault personal protection insurance (PIP) liability on the insurer of the parent who has been ordered physical custody, even when the child is not primarily living with that parent. The majority's rule, in my view, is inconsistent with the no-fault act, which provides PIP protection for "accidental bodily injury to the person named in the policy, the person's spouse, and a relative of either domiciled in *the same household* . . . ."[3]

It is an undeniable fact that parents involved in custody disputes often reach an agreement between themselves to provide for a different custodial environment than that provided in the family court's initial order of custody. I would adopt a rule that recognizes this reality. Specifically, I would conclude that family court orders of custody

---

[3] MCL 500.3114(1) (emphasis added).

3

establish a presumption of domicile that may be rebutted when the child's actual living arrangements are so clearly inconsistent with the family court's custody order that it is reasonable to conclude that the parents have expressly or impliedly reached an agreement regarding the child's domicile. To rebut this presumption, I would require courts to consider the factors traditionally used to assess domicile to determine the domicile of minor children.[4]

Thus, in *Grange*, I conclude that the presumption of domicile created by the family court's judgment of divorce is not rebutted under the facts of this case and, consistent with the majority, I would reverse the judgment of the Court of Appeals and remand to the circuit court for entry of summary disposition in favor of Grange. In *ACIA*, I conclude that the Court of Appeals erred by finding a question of fact regarding the child's domicile. Reviewing the record as a whole, I conclude that the evidence did not rebut the presumption, created by the family court's orders, that the child was domiciled in Tennessee. Consistent with the majority, I would reverse the judgment of the Court of Appeals and remand to the circuit court for entry of summary disposition in favor of ACIA.

---

[4] Notwithstanding all the good intentions behind a court order establishing joint custody, the reality remains that there is but one domicile for a minor child. As explained more fully in this opinion, see part I(F), factors such as where the child goes to school, where the majority of the child's belongings are kept, and the address used to register the child for functions will assist a fact-finder in making a domicile determination.

## I. ANALYSIS

### A. DOMICILE GENERALLY

A person's domicile is significant in a variety of legal contexts,[5] and it is a concept with deep roots in Michigan law.[6] This Court stated in 1847 that it is "well settled that no person can have more than one [national] domicile, at one and the same time . . . ."[7] This Court has recently reiterated that a person may have only one domicile, and "a domicile is 'the place where a person has his home, with no present intention of removing, and to which he intends to return after going elsewhere for a longer or shorter time.'"[8] Generally, domicile is "a question of fact and intent[,]" and a determination of domicile involves looking at all the facts and circumstances to determine whether the evidence that a person is domiciled in one location outweighs the evidence that a person is domiciled in another location.[9]

---

[5] See, e.g., *People v Dowdy*, 489 Mich 373, 376; 802 NW2d 239 (2011) (addressing "whether homeless sex offenders have a 'residence' or 'domicile' such that they can comply" with the Sex Offenders Registration Act); *In re Servaas*, 484 Mich 634, 642; 774 NW2d 46 (2009) (discussing Const 1963, art 6, § 20, which requires a judge or justice to vacate his or her office if he or she "removes his domicile beyond the limits of the territory from which he was elected or appointed . . . .").

[6] See *In re High*, 2 Doug 515, 522 (1847) ("It may be laid down as a settled maxim that every man must have such a national domicile somewhere.").

[7] *Id.*

[8] *Dowdy*, 489 Mich at 385, quoting *Hartzler v Radeka*, 265 Mich 451, 452; 251 NW 554 (1933).

[9] As stated by this Court in *In re High*, 2 Doug at 523-524:

> [Domicile] is always that place which has more of the qualities of a principal or permanent residence, and more pretensions to be considered as such, than any other place. Two things, it is said, must concur to constitute

As observed by the majority, there are three means of acquiring a domicile, depending on the factual context: "(1) domicile of origin or of nativity; (2) domicile of choice; and (3) domicile by operation of law."[10]  In *Miss Band of Choctaw Indians v Holyfield*, the Supreme Court of the United States discussed the concept of domicile, drawing on "common-law principles of domicile" and explaining:

> "Domicile" is, of course, a concept widely used in both federal and state courts for jurisdiction and conflict-of-laws purposes, and its meaning is generally uncontroverted.  "Domicile" is not necessarily synonymous with "residence," and one can reside in one place but be domiciled in another.  For adults, domicile is established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there.  One acquires a "domicile of origin" at birth, and that domicile continues until a new one (a "domicile of choice") is acquired.  Since most minors are legally incapable of forming the requisite intent to establish a domicile, their domicile is determined by that of their parents.[11]

Domicile by operation of law occurs when a person lacks the capacity to establish a domicile by choice.[12]  Therefore, because a minor child typically cannot form the

domicile. First, residence, which however is not indispensable to retain domicile after it has been once acquired; and, secondly, intention of making it the home of the party: *Story's Confl. Laws*, § 44. The question of domicile, is then, a question of fact and intent, and if these elements are found, the reference of the domicile to one place or another depends upon the comparative weight of the circumstances. In the language of the chief justice, in *Abington v. North Bridgewater*, 23 *Pick.*, 178, "it depends, not upon proving particular facts, but whether all the facts and circumstances taken together, tending to show that a man has his home or domicile in one place, overbalance all the like proofs tending to establish it in another.

[10] 8 Mich Civ Jur, Domicile, § 1.

[11] *Miss Band of Choctaw Indians v Holyfield*, 490 US 30, 48; 109 S Ct 1597; 104 L Ed 2d 29 (1996) (citations omitted).

[12] 8 Mich Civ Jur, Domicile, § 5.

6

requisite intent to establish a domicile by choice, a minor child's domicile is determined, by operation of law, by the domicile of the child's parents.[13] One's domicile of origin is the starting point, and it remains a person's domicile until that domicile is usurped by a subsequent domicile attained by choice or by operation of law.[14] Where a child's parents have changed their own domicile, the domicile of the child likewise changes by operation of law.[15] However, these common law notions of domicile do not resolve the question of

---

[13] *Miss Band of Choctaw Indians*, 490 US at 48. See 8 Mich Civ Jur, Domicile, § 21 ("Everyone is assigned a domicile of origin at birth by operation of law.") (emphasis added). But note, when a minor child has been emancipated, he or she may establish a domicile by choice. See MCL 722.4e(1)(d), which provides: "A minor emancipated by operation of law or by court order shall be considered to have the rights and responsibilities of an adult . . . . A minor shall be considered emancipated for the purposes of, but not limited to, . . . [t]he right to establish a separate domicile."

[14] Specifically, "[t]he domicil[e] of origin is the domicil[e] which a person has at birth[,]" and "[t]he domicil[e] of a legitimate child at birth is the domicil[e] of its father at that time, subject to the rule stated in § 22 pertaining to divorce or separation of the parents. If the child is not the legitimate child of its father, or is born after the father's death, its domicile at birth is the domicil[e] of its mother at that time." Restatement Conflict of Laws, 2d, § 14(2), p 59. The domicile of origin "continues until a new domicile is acquired." *Id.* at comment b.

[15] See *Hering v Mosher*, 144 Mich 152, 154, 155; 107 NW 917 (1906), in which this Court stated, "We accept the doctrine, as a general proposition, that the domicile of a child is that of its origin, or of its last surviving parent[,]" and "If [the child's father] gained a domicile [in Wayne County], conceding the general rule to apply, it became in law the domicile of this child." This Court also recognized in *Hering* that "[a] parent may give his child domicile different from his own by consenting to its adoption; that he may do so by less formal proceedings we consider equally permissible." *Id.* at 156.

7

where a child is domiciled when the child's parents share, at a minimum,[16] joint legal custody such that the child has two legal residences pursuant to the Child Custody Act.[17]

## B. DOMICILE AS IT RELATES TO THE MICHIGAN NO-FAULT ACT

Pursuant to MCL 500.3114(1), the no-fault act provides PIP protection for "accidental bodily injury to the person named in the policy, the person's spouse, and a relative of either domiciled in the same household . . . ." Generally speaking, domicile determinations for purposes of assessing insurer liability in the no-fault context are made by considering the factual circumstances surrounding the party's living situation and by balancing and weighing several factors, none of which is determinative on its own.[18] A non-exhaustive list of factors for determining whether a person is "domiciled in the same household" under the no-fault act was articulated by this Court in *Workman*:

> Among the relevant factors are the following: (1) the subjective or declared intent of the person of remaining, either permanently or for an indefinite or unlimited length of time, in the place he contends is his "domicile" or "household"; (2) the formality or informality of the relationship between the person and the members of the household; (3) whether the place where the person lives is in the same house, within the same curtilage or upon the same premises; (4) the existence of another place of lodging by the person alleging "residence" or "domicile" in the household.[19]

---

[16] Even when a family court order awards physical custody primarily or exclusively to one parent, the Legislature has determined that where joint legal custody exists, the minor child has a legal residence with each parent. MCL 722.31. See also part I(C).

[17] See part I(E).

[18] *Workman v Detroit Auto Inter-Ins Exch*, 404 Mich 477, 496; 274 NW2d 373 (1979).

[19] *Id.* at 496-497 (citations omitted).

To address "the particular problems posed by young people departing from the parents' home and establishing new domiciles as part of the normal transition to adulthood and independence[,]"[20] the Court of Appeals has considered whether a child of majority age is "domiciled" with the child's parents in several cases.[21] In the first of these cases, *Dairyland*, the Court of Appeals laid out additional relevant factors for determining whether a child is domiciled with his or her parents:

> [(1)] whether the claimant continues to use his parents' home as his mailing address, [(2)] whether he maintains some possessions with his parents, [(3)] whether he uses his parents' address on his driver's license or other documents, [(4)] whether a room is maintained for the claimant at the parents' home, and [(5)] whether the claimant is dependent upon the parents for support.[22]

However, this Court has not yet addressed where a *minor* child is "domiciled" for purposes of no-fault insurance when the child's parents maintain two separate households, which both constitute a legal residence of the child pursuant to the Child Custody Act.[23] Because domestic relations law and the Child Custody Act are implicated in this no-fault context, it is appropriate to review the law regarding child custody.

---

[20] *Dairyland Ins Co v Auto-Owners Ins Co*, 123 Mich App 675, 681; 333 NW2d 322 (1983).

[21] See, e.g., *Fowler v Auto Club Ins Ass'n*, 254 Mich App 362; 656 NW2d 856 (2002); *Goldstein v Progressive Cas Ins Co*, 218 Mich App 105; 553 NW2d 353 (1996) (noting that the injured child, who was a student attending college out of state from his parents' residence, with no specific age provided, was domiciled with his parents, not at the college).

[22] *Dairyland*, 123 Mich App at 682.

[23] MCL 722.31(1).

## C. CUSTODY DETERMINATIONS

Under the Child Custody Act, until a child turns 18, the family court has jurisdiction to make child custody determinations when there is a child custody dispute.[24] The Child Custody Act provides, in pertinent part:

> (1) If a child custody dispute has been submitted to the circuit court as an original action under this act or has arisen incidentally from another action in the circuit court or an order or judgment of the circuit court, for the best interests of the child the court may do 1 or more of the following:

> (a) Award the custody of the child to 1 or more of the parties involved or to others and provide for payment of support for the child, until the child reaches 18 years of age. . . .[25]

The Child Custody Act first provided for joint custody in 1981.[26] MCL 722.26a requires the family court to advise parents of joint custody and, upon request of either parent, to consider awarding joint custody of a child. "Joint custody" is defined as:

> . . . an order of the court in which 1 or both of the following is specified:

> (a) That the child shall reside alternately for specific periods with each of the parents[, or]

> (b) That the parents shall share decision-making authority as to the important decisions affecting the welfare of the child.[][27]

Although not specifically named as such by the statute, "the custody described in [(a)] is commonly referred to as joint physical custody, and that described in [(b)] is referred to

---

[24] MCL 722.27.

[25] MCL 722.27(1)(a).

[26] MCL 722.26a.

[27] MCL 722.26a(7).

10

as joint legal custody."[28] Therefore, a family court may grant (1) "legal custody" to one or both parents and (2) "physical custody" solely to one parent or jointly to both, which would involve the child "resid[ing] alternately for specific periods with each of the parents."[29]

Under MCL 722.31, where the parents of a child share joint legal custody and parental custody of that child is governed by a court order, the child is considered to have a legal residence with each parent for purposes of evaluating a parent's action to change the child's legal residence.[30]

---

[28] *Dailey v Kloenhamer*, 291 Mich App 660, 670; 811 NW2d 501 (2011).

[29] MCL 722.26a(7)(a).

[30] MCL 722.31 provides, in part:

>     (1) A child whose parental custody is governed by court order has, for the purposes of this section, a legal residence with each parent. Except as otherwise provided in this section, a parent of a child whose custody is governed by court order shall not change a legal residence of the child to a location that is more than 100 miles from the child's legal residence at the time of the commencement of the action in which the order is issued.
>
>     (2) A parent's change of a child's legal residence is not restricted by subsection (1) if the other parent consents to, or if the court . . . permits, the residence change. This section does not apply if the order governing the child's custody grants sole legal custody to 1 of the child's parents. . . .

Actions of a parent pursuant to MCL 722.31 are commonly referred to as petitions to change domicile, despite MCL 722.31's use of the term "residence." See, e.g., *McKimmy v Melling*, 291 Mich App 577, 580-582; 805 NW2d 615 (2011) (discussing change of domicile and change of legal residence interchangeably). It is significant that while the Legislature chose to focus on "legal residence," some practitioners and courts apparently colloquially use the term "domicile."

11

## D. A MINOR CHILD MAY NOT HAVE DUAL DOMICILES

Complications arise in determining the domicile of a child for purposes of no-fault insurance where the child has two legal residences because his or her parents share legal custody. The trial court and the Court of Appeals both reached the extraordinary conclusion in *Grange* that Josalyn had *two domiciles*: one with Rosinski and one with Lawrence. This conclusion departs from established Michigan law that a person may have only one domicile.[31] I join the majority in reaffirming this long-standing principle. Further, I agree with the majority's conclusion that *Workman*[32] "does not stand for the proposition that domicile is the equivalent of residence under MCL 500.3114(1)."[33]

As this Court stated in *Gluc v Klein*:

> Under the common law, there was a distinction between "domicile" and "residence." The former, in its ordinary acceptation, was defined to be, "A place where a person lives or has his home," while "Any place of abode or dwelling place," however temporary it might have been, was said to constitute a residence. A person's domicile was his *legal* residence or home in contemplation of law.[34]

While "residence" may be defined in more restrictive ways under Michigan law,[35] for example, "*legal* residence" as discussed in *Gluc*, the underlying distinction between the

---

[31] *Dowdy*, 489 Mich at 385; *In re High*, 2 Doug at 522.

[32] *Workman*, 404 Mich at 495 (stating "the terms 'domicile' and 'residence' are legally synonymous").

[33] *Ante* at 20.

[34] *Gluc v Klein*, 226 Mich 175, 177-178; 197 NW 691 (1924) (emphasis added).

[35] See, e.g., *Dowdy*, 489 Mich at 382, where this Court noted that the Legislature chose to define the word "residence" as used in the Sex Offender Registry Act to mean

concepts of domicile and residence remains: while a person may have only one domicile, he or she may have more than one residence. And while legal residence is often equated with domicile, because there can be only one domicile, where two legal residences exist, it is axiomatic that only one can be determined to be the domicile. The fact that a domicile determination is complicated by the factual circumstances of the inquiry does not constitute a sound reason to depart from the established principle that a person can have only one domicile. Therefore, even where a child is considered to have a legal residence with each parent, his or her domicile must be that of only *one* of the child's parents.

## E. THE MAJORITY'S DOMICILE BY OPERATION OF LAW APPROACH

The majority attempts to extend the common-law doctrine of domicile by operation of law beyond its logical and practical bounds. I agree with the majority that unemancipated minor children cannot establish a domicile by choice, given that they are incapable of forming the requisite intent.[36] But domicile by operation of law, the means by which unemancipated minors acquire the domicile of their parents, is not easily determined when parents share joint legal custody, given that joint legal custody creates

---

> *that place* at which a person habitually sleeps, keeps his or her personal effects, and has a regular place of lodging. If a person has more than 1 residence, or if a wife has a residence separate from that of the husband, that place at which the person resides the greater part of the time shall be his or her official residence for purposes of this act. [Quotation marks and citation omitted.]

[36] *Miss Band of Choctaw Indians*, 490 US at 48.

two legal residences for the child, either of which could constitute the child's domicile.[37] While the domicile-by-operation-of-law framework indicates that there are two potential residences where a child could be considered domiciled in this context, given that there can only be one domicile, it stops short of answering, "Which legal residence constitutes the child's domicile?"

Despite the fact that the majority and I agree that a child may only have one domicile at any given time, the majority's alternating-domicile theory for children whose parents share joint physical custody contradicts this long-standing principle and in substance permits dual domiciles for such children. This alternating-domicile concept is unprecedented in the domicile jurisprudence of this state, which views domicile as that place where a person ultimately returns, despite going elsewhere for a period of time.[38] As the majority states, "For over 165 years, Michigan courts have defined 'domicile' to mean 'the place where a person has his true, fixed, permanent home, and principal

---

[37] MCL 722.31(1). The general rule is that "[a] child's domicile, in the case of the divorce or separation of his parents, is the same as that of the parent to whose custody he has been legally given." Restatement Conflicts of Laws, 2d, § 22, comment d. However, this rule is unhelpful where legal custody has been given *jointly* to both parents. See also *In re Volk*, 254 Mich 25, 32; 235 NW 854 (1931), overruled in part on other grounds by *Hentz v Hentz*, 371 Mich 335 (1963), in which this Court concluded that a child whose mother was given unrestricted custody of her minor child pursuant to a judgment of divorce was domiciled with the child's mother, quoting 9 RCL, p 549, which stated, "When a divorce has been granted to the wife, however, and unrestricted custody of the minor child of the marriage given her in the decree, her own domicile, and not the father's, establishes that of the child." However, in the cases at issue, unlike *Volk*, the parents shared *joint* legal custody. Neither parent in either of the present cases was granted unrestricted custody, as in *Volk*. Therefore, I question the majority's reliance on this case.

[38] *In re High*, 2 Doug at 522-523.

14

establishment, and to which, whenever he is absent, he has the intention of returning.'"[39] The fact that a child cannot establish a domicile by choice is not a sufficient reason to ignore that *permanence* underpins the concept of domicile in our jurisprudence.[40]

Further, the majority opinion assumes that a custody order establishes domicile as a matter of law. While a family court's orders pertaining to custody and the legal residence of a child, if implemented, can certainly establish custodial environments from which a domicile arises and, thus, a legal determination of domicile can be made, I question whether the family court has the authority under the Child Custody Act to explicitly *set* a child's domicile by court order. The Child Custody Act speaks in terms of "legal residence" and only uses the word "domicile" in one section of the statute, MCL 722.27b(9), which states:

> The court shall not enter an order prohibiting an individual who has legal custody of a child from changing the domicile of the child if the prohibition is primarily for the purpose of allowing a grandparent to exercise the rights conferred in a grandparenting time order entered under this section.

Significantly, the use of "domicile" in this section does not suggest that family courts have the authority to establish, as a matter of law, a child's domicile in making a custody determination. Rather, this section assumes a parent has legal custody of a child, and it

---

[39] *Ante* at 15, quoting *In re High*, 2 Doug at 523.

[40] *See In re High*, 2 Doug at 522 ("[Domicile] is always that place which has more of the qualities of a principal or permanent residence, and more pretensions to be considered as such, than any other place.").

15

prohibits a court from barring that parent from a change of domicile so that a grandparent may seek or maintain visitation with the child.

Moreover, the majority rule now requires insurance companies to inquire about custody orders, obtain a copy of those orders, and interpret those orders to properly assess its risks,[41] which unduly burdens insurers and injects unreasonable uncertainty into an insurer's risk-assessment process.[42] The majority's rule prevents an insurer from being able to simply ask, "Who resides with you?" to assess its risks. Ultimately, the majority's rule, in my view, is inconsistent with the no-fault act, which provides PIP protection "to accidental bodily injury to the person named in the policy, the person's spouse, and a relative of either domiciled in *the same household* . . . ."[43] Under the majority's rule, a child could be "domiciled" in one state pursuant to a custody order, but actually live in another state.[44] It is difficult to discern how such a situation could constitute being domiciled *in the same household*.

---

[41] See *Titan Ins Co v Hyten*, 491 Mich 547, 570; 817 NW2d 562 (2012) (reaffirming the principle that "an insurer has no duty to investigate or verify the representations of a potential insured").

[42] Footnote 77 of the majority's opinion, which indicates that in situations of joint legal and physical custody, domicile would alternate consistent with the family court's orders, is particularly troubling in this regard.

[43] MCL 500.3114(1). Emphasis added.

[44] Take, for example, the following hypothetical: A Michigan couple gets divorced, and the mother and the father are awarded joint legal custody of the couple's three-year-old daughter, but mother is awarded sole physical custody. The father moves to Florida because he cannot find work in Michigan. Ultimately, after several months, the mother decides she does not want to raise the young child, discusses this with the father, and the child is sent to live with the father in Florida. The mother and the father do not go back to court to seek a change in custody in either state. The child gets into a car accident at

16

## F. DETERMINATION OF DOMICILE OF CHILDREN WITH TWO LEGAL RESIDENCES

A domicile determination for a minor child of parents who have separate domiciles brings with it unique considerations due to the family court's involvement in making child custody determinations and the court's involvement in circumstances where a change in the legal residence of a child is disputed.[45] Like the traditional examination of a person's domicile, in my view, the determination of the domicile of a child with two legal residences requires a review of all the facts and circumstances to determine whether the evidence that the child is domiciled in one legal residence outweighs the evidence that the child is domiciled in another legal residence.[46] But in light of the family court's involvement in determining where a child resides, and the deference owed to that court's determinations, an inquiry into where a child is domiciled also necessarily involves consideration of the family court's orders relating to custody of a child and a child's legal residence(s). While generally no one factor is conclusive in determining domicile,[47] in this unique context, a family court's custody and residence determinations are the starting point for determining a child's domicile because "[a] party must obey an order entered by a court with proper jurisdiction."[48] Therefore, I would begin with the presumption that

---

the age of 16 in Florida. Under the majority's rule, the child would be domiciled in Michigan, despite living for nearly 13 years in Florida under the exclusive care of her father.

[45] MCL 722.27; MCL 722.31.

[46] See *In re High*, 2 Doug at 522-523.

[47] *Workman*, 404 Mich at 496.

[48] *Kirby v Mich High Sch Athletic Ass'n*, 459 Mich 23, 40; 585 NW2d 290 (1998).

the parties to family court orders relating to custody and residence of the child have in fact obeyed and implemented those orders.[49]

Further, custody and residence determinations are made by family courts when *disputes* arise between parents.[50] A family court's custody and residence determinations inform where and with whom the child is *supposed* to live, sleep, spend his or her time, and ultimately return, though the child may spend time elsewhere. I would establish a rule that presumes that these determinations reflect the actual living situation of the child, and, thus, function as a proxy for the intent of the parents regarding the child's domicile, due to the parents' inability to form a joint parental intent.

Nonetheless, I recognize the reality that, with the passage of time, a child's living situation will not always align with the family court's orders, despite the general rule that

---

[49] See the discussion of presumptions in *Johnson v Secretary of State*, 406 Mich 420, 432; 280 NW2d 9 (1979), where this Court noted:

> The burden of producing evidence is not invariably allocated to the pleader of the fact to be proved. That burden may be otherwise allocated by the Legislature or judicial decision based, among other factors, on an estimate of the probabilities, fairness and special policy considerations, and similar concerns may justify the creation, judicially or by law, of a presumption to aid the party who has the burden of production.

See also *Juvelis v Snider*, 68 F3d 648, 651, 657 (CA 3, 1995) (permitting the domicile by operation of law conclusion that a "profoundly retarded and physically handicapped 33 year old" is domiciled where his parents were domiciled to be rebutted by (1) "several objective factors that support the conclusion" that the man had "established a domicile in Pennsylvania," (2) the man's expressed "subjective attachment" to his residence, "within his limited ability to" express such an attachment, and (3) the fact that his parents acted in good faith and in the man's best interest by asserting that the man was domiciled at the residential home in Pennsylvania).

[50] See MCL 722.27(1); MCL 722.31(2).

a party must follow the orders of a court. It is common for parents, after the bitterness of a custody dispute has subsided, to resolve their differences over time and to reach an agreement regarding the living arrangements for their child.[51] Parents commonly reach amicable, private agreements, reflective of their joint intent, that conflict with an existing family court order.

Regarding a change in legal residence, the Child Custody Act requires parents to seek the family court's approval before moving a child more than 100 miles from his or her legal residence, unless, among other exceptions, the other parent *consents* to the move.[52] Regarding a modification of a custody order, however, the Child Custody Act envisions parents returning to the family court to seek modifications.[53] Therefore, while

---

[51] This Court held in *Harvey v Harvey*, 470 Mich 186, 194; 680 NW2d 835 (2004), that parties cannot "limit the trial court's authority to review custody determinations" by stipulation to a particular custody arrangement. There is no question that if a custody or legal-residence matter came before the family court, the family court alone is charged with making determinations in the child's best interests, and stipulation by the parties to an alternative custody arrangement cannot usurp that authority. However, this is not the situation in the cases currently before this Court; the situation in question is one in which parents, after the entry of a court order regarding custody or legal residence, have not sought the family court's subsequent intervention and have amicably chosen, *despite* the binding legal nature of the orders, to act in contravention of a family court's orders. See also *Phillips v Jordan*, 241 Mich App 17, 23-24; 614 NW2d 183 (2000) (holding that the trial court properly set aside a stipulated custody order where "the trial court entered the stipulated order to change custody without making any independent determination regarding the best interests of the child pursuant to the Child Custody Act").

[52] MCL 722.31(2).

[53] MCL 722.27(1)(c) provides, in part:

> If a child custody dispute has been submitted to the circuit court as an original action under this act or has arisen incidentally from another action in the circuit court or an order or judgment of the circuit court, for the best interests of the child the court may] . . .

parents have a legal duty to seek the family court's approval of amicable agreements regarding custody modifications, this does not always occur. The majority's view fails to take this reality into account.

In consideration of these realities, while at the same time recognizing the need for a rule that fosters consistency, I would hold that, for purposes of determining domicile under the no-fault act, where the facts regarding the child's living arrangements are reasonably consistent with the provisions of the family court's orders, those orders will be determinative of the child's domicile.[54] However, where the facts of the child's living

---

\* \* \*

> (c) Modify or amend its previous judgments or orders for proper cause shown or because of change of circumstances until the child reaches 18 years of age and, subject to section 5b of the support and parenting time enforcement act, 1982 PA 295, MCL 552.605b, until the child reaches 19 years and 6 months of age. The court shall not modify or amend its previous judgments or orders or issue a new order so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child.

[54] When family court orders exist, they are, in my view, central to determining the domicile of a minor child in the no-fault context. But domicile determinations in no-fault decisions have no effect in family court adjudications regarding a child's custody and legal residence. Family courts are charged with making determinations that focus on the best interests of the child. See MCL 722.27(1) ("If a child custody dispute has been submitted to the circuit court as an original action under this act or has arisen incidentally from another action in the circuit court or an order or judgment of the circuit court, for *the best interests of the child* the court may do 1 or more of the following[.]") (emphasis added); see also MCL 722.31(4) ("Before permitting a legal residence change otherwise restricted by subsection (1), the court shall consider each of the following factors, *with the child as the primary focus* in the court's deliberations[.]") (emphasis added); *Gagnon v Glowacki*, 295 Mich App 557, 570; 815 NW2d 141 (2012) ("After granting a change of domicile, the trial court must determine whether there will be a change in the established custodial environment and, if so, determine whether the relocating parent can prove, by clear and convincing evidence, that the change is in *the child's best interest*.") (emphasis

20

arrangements are so clearly inconsistent with the family court's orders that it is reasonable to conclude that the child's parents have expressly or impliedly reached an agreement regarding the child's domicile that differs from the domicile indicated by the family court's orders, the presumption of domicile created by the family court's orders would be rebutted.[55] Under this rule, courts would make domicile determinations in light

added). No-fault decisions regarding insurer priority on the basis of domicile determinations are inapposite to custody and legal residence determinations in the family court context because no-fault law focuses on the practical issue of which insurer is liable for insurance coverage and does not take into consideration the best interests of the child. Again, I question whether the family court has the authority under the Child Custody Act to explicitly *set* a child's domicile, as opposed to establishing the custodial environment in which the child will live.

[55] The majority approach fails to recognize that a court order may allow parents to modify the time a child spends with each parent. For example, in Grange the custody order provides:

> IT IS FURTHER ORDERED that the Defendant, EDWARD BLAINE LAWRENCE, shall have rights of parenting time with the minor child at the following times:
>
> 1. Alternating weekends from Friday at 6p.m. until Sunday at 6 p.m.;
>
> 2. Every Wednesday from 4:30 p.m. until 7:30 p.m.[;]
>
> 3. Alternating Holidays by mutual agreement . . . ;
>
> 4. *Any other reasonable times that the parties may agree to*[.] [Emphasis added.]

Under this provision of the order, the parents were free to alter the child's living arrangements such that the father could be primarily responsible for the physical custody of the child. The majority would ignore a subsequent decision by the parents to make the father the new primary custodian in fact, reasoning that such changes only alter parenting time and not the domicile. For the reasons stated in this opinion, we believe the better approach is to make domicile determinations on the basis of the actual living situation of the child.

21

of the actual facts of the custodial situation, rather than solely on a court order that may have little relevance to the actual living situation of the child after the passage of time, namely, with regard to which parent actually has physical custody of the child.[56] This presumption would promote certainty regarding domicile determinations in the no-fault context,[57] maintain the long-standing character of the no-fault domicile inquiry as an inquiry focused on the actual facts of the situation,[58] and afford the appropriate deference that custody and legal-residence determinations ought to be given outside the domestic relations context.[59]

---

[56] It is important to note that while "physical custody" is a term commonly associated with the custody described in MCL 722.26a(7)(a), this phrase is not defined in the Child Custody Act. However, MCL 722.1102(n), a provision of the Uniform Child-Custody Jurisdiction and Enforcement Act, defines "physical custody" as "the physical care and supervision of a child."

[57] See *Citizens Mut Ins Co v Community Servs Ins*, 65 Mich App 731, 733; 238 NW2d 182 (1975) ("There is reason for limiting insurance benefits to any relative of the insured or his spouse to those relatives domiciled in the insured's household. *It creates a definite limit to the exposure of the insurer, an essential factor in determining the insurance premium*.") (emphasis added); but see *Bierbusse v Farmers Ins Group of Cos*, 84 Mich App 34, 36-38; 269 NW2d 297 (1978) (declining to follow the "hard and fast rule set forth in *Citizens Mutual*" because doing so would deny relief to the plaintiff daughter, holding, "When a couple is separated pending divorce and one spouse is the named insured on a no-fault policy, the other spouse and the children of the named insured are covered by the no-fault policy, even though they are domiciled in separate households, until the divorce is finalized."). The Court of Appeals in *Bierbusse* also stated, "*While agreeing that the statute should be interpreted in a manner that allows an insurer to reasonably calculate the scope of risk and the premium incidental thereto*, we do not believe that a per se rule excluding from coverage any relative not domiciled in the same household as the named insured is in accord with the legislative intent." *Id.* at 37 (emphasis added).

[58] *Workman*, 404 Mich at 496-497; *In re High*, 2 Doug at 523.

[59] The rule I propose is consistent with this Court's decision in *Volk* in which the child was determined to be domiciled with the child's mother where the mother was given

In determining whether this presumption can be rebutted, I would have courts look to the traditional nonexclusive factors for determining domicile for purposes of no-fault insurance articulated by this Court in *Workman* and, particularly, those articulated by the Court of Appeals in *Dairyland*, which specifically address whether a child is domiciled with his or her parents under the no-fault act. While *Dairyland* involved a child that had reached the age of majority, I find these factors to be similarly relevant for determining the intent of a minor child's parents regarding the child's domicile because they focus on objective indicators of the intent to have the child remain permanently in a given home. Additionally, there are other relevant factors that are unique to the context of minor children whose parents share joint custody: (1) where the child actually spends the majority of his or her time, and (2) where the child actually sleeps the majority of the

---

unrestricted custody. Under my rule, just as under the majority rule, a child whose mother or father is given sole legal *and* physical custody, i.e., where one parent has *unrestricted* custody, is domiciled with that parent because there is only one legal residence that can constitute the child's domicile.

Further, I note that in *Vanguard Insurance Co v Racine*, 224 Mich App 229, 233; 568 NW2d 156 (1997), the Court of Appeals stated that a person has one domicile and concluded that the child at issue "would be" domiciled with the child's mother because the mother's home "was where [the child] spent the majority of his time and where [the child's mother] had physical custody of [the child] under the divorce judgment." However, I note that the Court of Appeals made this statement without fully analyzing this issue and without providing authority to support its conclusion. Additionally, this statement of the Court of Appeals cannot fairly be interpreted as indicating that the court considered the custody determination in the judgment of divorce to be conclusive of domicile, given that the court, in the same breath, pointed to where the child spent the majority of his time.

23

nights of the week. It bears repeating, however, that none of these domicile factors would alone be determinative.[60]

## II. APPLICATION

### A. *GRANGE INS CO OF MICH v LAWRENCE*

Because the underlying facts necessary to determine Josalyn's domicile at the time of her death are not in dispute, where Josalyn was domiciled is a question of law.[61] In the present case, the judgment of divorce granted joint legal custody to both Lawrence and Rosinski, but primary physical custody to Rosinski and a significant amount of parenting time to Lawrence. The family court's judgment demonstrates that it was intended that Josalyn would spend the majority of her time at Rosinski's residence, and while there was the intent for Josalyn to spend time with Lawrence at his residence, the intent was always for the child to return to Rosinski's residence. Therefore, under the rule I would establish, the custody determination contained within the judgment of divorce in this case would create a rebuttable presumption that the child was domiciled with Rosinski.

With regard to whether this presumption created by the family court order could be rebutted, I would conclude that it cannot under the facts of this case. Because Rosinski's residence was identified whenever an address was needed for the child, the little mail Josalyn received would have been sent to this address. The accident report and Josalyn's death certificate both listed Rosinski's home as the child's home. While Lawrence did maintain a room for the children in his apartment, the sisters shared a bed,

---

[60] *Workman*, 404 Mich at 496.

[61] See *Fowler*, 254 Mich App at 364.

and the majority of Josalyn's clothing and her pets were kept at Rosinski's residence. Josalyn depended on both of her parents for support. The facts also indicate that Josalyn spent the majority of her time and the majority of her overnights at Rosinski's home. Significantly, both Lawrence and Rosinski indicated that Rosinski's home was Josalyn's primary residence, given the ordinary meaning of the phrase. Overall, the facts in this case indicate that Lawrence and Rosinski implemented the custody order and do not demonstrate that Lawrence and Rosinski jointly intended for Lawrence's residence to be the child's only domicile. On this basis, I would conclude that the lower courts erred by concluding that Josalyn was domiciled with both Lawrence and Rosinski and that Grange was liable for PIP benefits arising out of Josalyn's injuries and death.[62]

---

[62] In our grant order, this Court asked the parties to address in part "whether an insurance policy provision giving preclusive effect to a court-ordered custody arrangement is enforceable." *Grange Ins Co of Mich v Lawrence*, 493 Mich 851 (2012). For the reasons set forth in this opinion, I agree with the majority that Grange is entitled to summary disposition. Nonetheless, under my rule, I would conclude that a portion of the Grange policy may be invalid.

"To the degree that [a policy] is in conflict with the [no-fault] statute, it is contrary to public policy and, therefore, invalid." *Cruz v State Farm Mut Auto Ins Co*, 466 Mich 588, 601; 648 NW2d 591 (2002). Regarding PIP benefits, the Grange policy defined a covered "insured," in pertinent part, as "any family member," which in turn was defined as:

> [A] person related to **you** by blood, marriage or adoption and whose principal residence is at the location shown on the Declarations Page. *If a court has adjudicated that one parent is the custodial parent, that adjudication shall be conclusive with respect to the minor child's principal residence*. [Emphasis added.]

The issue is whether, under my rule, the italicized portion of this definition would violate the no-fault act, which provides for PIP benefits for relatives of an insured, who, in relevant part, are a "*relative of [a person named in the policy or the person's spouse] domiciled in the same household . . . .*" MCL 500.3114(1) (emphasis added).

## B. *ACIA v STATE FARM MUTUAL AUTO INS CO*

The material facts necessary to determine Sarah's domicile at the time of her death are not in dispute; therefore, where Sarah was domiciled is a question of law.[63] The original judgment of divorce granted physical custody to Campanelli and indicated that the child's domicile was to be in Michigan. However, Campanelli obtained permission as the custodial parent, by order of the court, to change the child's domicile to Tennessee. Before the child's death, an ex parte order from the circuit court purportedly transferred custody of Sarah to Taylor and changed Sarah's domicile to Taylor's Michigan address; however, this order was subsequently vacated and declared void *ab initio*. The judgment of divorce granting physical custody to Campanelli and the subsequent order changing the child's domicile to Tennessee demonstrate that it was intended that Sarah would spend the majority of her time with Campanelli in Tennessee. While there was the intent for Sarah to leave Tennessee to spend time with Taylor in Michigan, the intent was always for Sarah to return to Tennessee. Therefore, I would conclude that these orders would establish a presumption that Sarah was domiciled in Tennessee with Campanelli.

---

It is clear from the policy's choice of the phrase "principal residence" that Grange anticipated the factual dilemma that arose in this case: a child of divorced parents with *two legal residences* under Michigan law. The policy's statement that a court adjudication regarding custody is conclusive constitutes Grange's attempt to close what it saw as a potential gap in the no-fault act that could have been interpreted to expand Grange's liability. Because a minor child of divorced parents could have two legal residences, Grange recognized that it was not entirely clear under Michigan law whether such a child could likewise have *two domiciles* for purposes of PIP benefits pursuant to MCL 500.3114(1). However, because Grange's policy makes custody orders conclusive of domicile, the policy would conflict with the rule I have proposed in this opinion.

[63] See *Fowler*, 254 Mich App at 364.

With regard to whether this presumption could be overcome in this case, the factual situation presented in *ACIA* is a closer question than the situation presented in *Grange*. However, as in *Grange*, I would conclude that the presumption likewise cannot be rebutted under the facts of *ACIA*. The fact that Sarah stayed in Michigan after her summer break, attended high school in Michigan the following fall, and obtained a part-time job in Michigan, indicates that Sarah used Taylor's address as her mailing address and on documents. Taylor's address was also listed as Sarah's address on Sarah's hospital records and death certificate. Given the length of Sarah's stay in Michigan, it can be inferred that she had a significant amount of possessions at Taylor's Michigan residence. The facts indicate that Sarah had her own room in Michigan and that Taylor provided for Sarah while she was in Michigan. It is also clear that for the period of time that Sarah was staying in Michigan, she actually spent most of her time and overnights in Michigan; however, prior to Sarah coming to Michigan, she spent nearly 11 years in Tennessee with Campanelli, only occasionally visiting Taylor in Michigan. None of the facts in the record suggest that Sarah's domicile in Tennessee ceased to exist; the facts indicate that Campanelli gave Sarah permission to stay temporarily in Michigan after the summer to attend school in the fall so that Sarah could get to know Taylor better. Campanelli stated, "I did eventually agree that she could stay on a temporary basis and enroll in high school[,]" and further stated, "It was never intended to be permanent . . . ."

The facts in this case are not so clearly inconsistent with the family court's orders so as to rebut the presumption that domicile is established by the custody order. Absent evidence of a clear joint intent on the part of Sarah's parents to change Sarah's domicile, the presumption that Sarah was domiciled in Tennessee would stand. While the facts

27

certainly indicate that there was the intent for Sarah to remain for an extended period of time in Michigan, the facts do not clearly indicate that Sarah's parents jointly intended for her to remain in Michigan.

In my view, the lower courts improperly focused on Sarah's intent with regard to her domicile and whether she intended to remain in Michigan or return to Tennessee. While Sarah was an older teen at 16 years old, she was not emancipated. An unemancipated minor child's intent is *not pertinent* in determining where the child is domiciled under the no-fault act.[64] The appropriate inquiry instead focuses on whether the *child's parents* have reached a joint intent regarding the child's domicile that differs from the domicile indicated by the family court's orders.

I would conclude that Sarah was domiciled with Campanelli in Tennessee at the time of her death; therefore, ACIA is not liable for providing PIP benefits for Sarah's injuries and death.

### III. CONCLUSION

Consistent with the majority opinion, I would reaffirm Michigan's long-standing principle that a person, including a minor child, can have only one domicile. Further, I concur in the majority's results in these cases. I would reach those results instead by holding that when a minor child has two legal residences pursuant to the Child Custody

---

[64] See *Miss Band of Choctaw Indians*, 490 US at 48; MCL 722.4e(1)(d). I recognize that a child's preference is considered by the family court in certain circumstances. See MCL 722.23(i) (listing "[t]he reasonable preference of the child, if the court considers the child to be of sufficient age to express preference[,]" as a factor in the best-interest-of-the-child determinations). However, I would distinguish that the intent of the child is not pertinent for purposes of determining domicile under the no-fault act.

28

Act, family court orders relating to custody of the child and the child's residence(s) create a rebuttable presumption of domicile under the no-fault act. Under the facts of these cases, the presumptions in these cases would not be rebutted.

Brian K. Zahra
Stephen J. Markman
Bridget M. McCormack
